Cobb vs. Black.

JACOB L. COBB, plaintiff in error, *vs.* E. M. BLACK, defendant in error.

[1.] A Judge of the Superior Court having, in vacation, appointed a receiver to take possession of any fund, or property, in litigation, may, in vacation, enforce the delivery of such fund or property to the receiver, by attaching and imprisoning any party refusing obedience to his order.

[2.] The fifth specification, under section 242, of the Code, is applicable only to the punishment for contempt by acts done; it is inapplicable to attachment and imprisonment for contempt in refusing to do an act required by order or decree of a Court, in furtherance of justice, and as part of the remedy in a suit pending.

*Habeas Corpus.* Decided by Judge JOHN T. CLARKE, at Chambers, January 1865.

In Equity, in Randolph Superior Court, there was pending a bill for account, etc., in favor of Morris *vs.* Cobb and another. On the fifth of July 1864, the Judge of the Superior Court passed an order appointing one Emmerson a receiver, to receive and hold, subject to future direction, the property which this bill put in litigation. The same order required Cobb to turn over the property to the receiver within ten days after service of the order. On the twenty-fifth of August, the Judge passed another order, increasing the receiver's bond, and requiring that thereupon the defendant, Cobb, should turn over that portion of the property which still remained in his possession.

On the second of September, at Chambers, the same Judge granted a rule *nisi,* calling upon Cobb to show cause before him *instanter,* why he should not be attached for contempt, because of his refusal to turn over to the Receiver, in pursuance of these orders, certain cotton, promissory notes, negroes, and money, described in the bill, and particularly specified in the rule *nisi.* To this rule Cobb made answer, in writing, that he had not, *on that day,* seen the Receiver; that the Receiver had not, *on that day,* demanded the things specified in the rule; that Cobb had not, *on that day,* refused to deliver them to the Receiver in person; and that, as he believed, he had not had any conversation with

the Receiver since the latter and his securities had entered into the required bond on the day preceding.

Thereupon, after hearing argument, the Judge, on the same day, made the rule absolute, at Chambers, and ordered an attachment to issue forthwith against Cobb, for contempt. The attachment was then issued by the Judge himself, as follows:

"State of Georgia, ) To all and singular the Sheriffs and Stewart County. ( Constables of said State.

"You are hereby commanded to seize the body of Jacob L. Cobb, of Randolph county, this day duly convicted before me of contempt, in the disobedience to our order requiring him to turn over to the Receiver appointed by our order, in the bill now pending in said county of Randolph, in favor of James Morris vs. said Cobb and one H. J. Sprayberry, the property in dispute in said cause, as in said bill described; and him, the said Cobb, to convey to, and confine in the common jail of said county of Randolph, then and there to be kept without bail or main-prize, until he shall deliver to said Receiver, viz: Caleb J. Emmerson, the property still withheld by him, as set forth in the rule nisi for a contempt this day issued by us in said cause against said Cobb, and in said bill described.

"Herein fail not, under the penalty of the law. Witness my official signature, this September 2d, 1864.

JOHN T. CLARKE, J. S. C. P. C."

Upon this attachment Cobb was arrested, the day after its date, and placed in the custody of Black, the defendant in error, jailor of Randolph county.

After remaining in jail until the 2d of January 1865, he applied on that day to Judge Clarke for a writ of habeas corpus, alleging in his petition, that Black, the jailor, held him unlawfully in prison, because the Judge, in the proceedings just recited, had not only transcended the powers conferred on him as a Judge in vacation, but had exceeded the jurisdiction of even the Superior Court in term time, in the length of the imprisonment imposed. To the petition was

annexed a copy of the rule *nisi*, and of all the proceedings thereon, down to the return of the arresting officer.

The writ was granted; and the jailor produced the body of the petitioner, and returned as the cause of his detention, the attachment described above.

At the hearing, which took place before Judge Clarke on the 13th of January, counsel for the petitioner urged that the Judge of the Superior Court could not originate at chambers a rule *nisi* to punish a party for an alleged contempt touching a previous order made by the Judge in vacation; that the Superior Court in term time, and it alone, could enforce obedience to such an order as that passed by the Judge, "out of Court," on the 5th of July 1864; that the Judge, in granting the rule *nisi*, rendering judgment thereon, issuing the attachment, and causing Cobb to be arrested and imprisoned, transcended the powers conferred on a *Judge* of the Superior Court; and that, as to the length of the imprisonment, the jurisdiction of even the Superior Court in term time had been exceeded.

These positions the presiding Judge over-ruled, and gave judgment remanding Cobb to the custody of the jailor; and counsel for Cobb excepted.

B. HILL, representing WORRILL and WIMBERLY, for plaintiff in error.

PLATT, for defendant.

*By the Court.*—JENKINS, J. delivering the opinion.

The motion before the Court below was to discharge the relator from his imprisonment for contempt, and two grounds were urged in support of it.

1. That the order for attachment had been issued in vacation, whereas, the Judges of the Superior Courts have authority to make such orders only in term time. 2. That the Judge in this case exceeded his authority by prolonging the imprisonment beyond twenty days.

[1.] Section 271 of the code provides that "When any fund or property may be in litigation, and the rights of either or both parties cannot be otherwise fully protected, or when there may be a fund or property having no one to manage it, a receiver of the same may be appointed (on a case made) by the Judge of the Superior Court, having jurisdiction thereof, either in term time or vacation, and such receiver is an officer of said Court." The authority is here given in express terms to make such appointment in vacation, where the rights of a party litigant cannot be otherwise fully protected. It is not denied that a proper case was made, nor that the necessity of the appointment for the protection of complainant's rights was shown, in due form, to the Judge, nor indeed, that under the circumstances the appointment of a receiver was properly made in vacation. The exception is taken to the attachment of the defendant below for contempt, in refusing to deliver the assets in question to the receiver appointed—to the doing of that which alone could give effect to the order in chambers expressly authorized. Attachment and imprisonment of the person is the process by which Courts of equity enforce obedience to orders or decrees, requiring an act to be done by a party over whom they have acquired jurisdiction. The authority to appoint a receiver in vacation is given because necessary to the protection of the rights of the party. That appointment will be unavailing, unless the assets in dispute be promptly delivered to the receiver. Such delivery cannot be enforced without attachment in vacation, in case of disobedience. In this view we should have no difficulty in holding that the power to attach followed, as an incident, the power to appoint in vacation, if there were no other provision of law in the premises. But this is not all. Section 242 defines the powers of the "Superior Courts," and section 243 those of "the Judges of the Superior Courts"—the former having reference to jurisdiction in term time, and the latter in vacation. The 4th specification under the latter, empowers the Judges "to perform any and all acts required of

them at chambers," and the 5th "to exercise all powers
necessarily appertaining to their jurisdictions." Now, the
act, in this case, "required" of the Judge below, "at cham-
bers," was the placing of the assets in dispute in the hands
of a receiver, and the defendant having proved refractory,
the power of attaching and imprisoning, to compel obedi-
ence, "necessarily appertained to his jurisdiction."

Again, title V. chapter I. of the code, in section 200, pro-
vides that, "every Court has power to compel obedience to its
judgments, orders, and process, and to the orders of a Judge
out of Court, in an action or proceeding therein." These
provisions, we think, fully sustain the action of the Court.

[2.] It is attempted to prove that the Judge exceeded his
power in prolonging the imprisonment beyond twenty days,
by reference to sections 4902, 4593, and 242, (specification 5.)
Those provisions of law refer to attachments for contempt
which are simply punitive. They apply where an act has
been done which has disturbed the regular proceedings of
the Court, or resisted its authority, or reflected contempt
upon it. To prevent a repetition of the offence, and to deter
others from its commission in future, the power of inflicting
summary punishment is given to Courts. The act has been
done, and when the punishment shall have been inflicted, the
whole matter is at an end. These are the cases in which the
power of fining is limited to two hundred dollars, and of im-
prisoning to twenty days. But there are cases, and such is
the present, wherein the process of attachment is remedial.
The Court orders or decress that a party, regularly before it,
do a certain act necessary to the administration of justice,
according to law, and the party refuses to do it. As the only
means of compelling obedience and furthering the adminis-
tration of justice, Courts, in such cases, have power to im-
prison the refractory party until he shall obey the precept.
A party may be practicing a scheme of fraud, involving mil-
lions of dollars, to the accomplishment of which, the continu-
ed possession of certain assets, or papers, or books of account
is necessary. The mind of the Chancellor having jurisdiction

over him, in a case pending, being properly informed, and his conscience satisfied, he requires the delivery of the assets, books, or papers to a receiver appointed, on pain of attachment for contempt. But if the extreme consequence of the attachment be a fine of two hundred dollars and imprisonment for twenty days, what prospect is there that he will forego the anticipated rich harvest of fraud, rather than suffer these light inflictions? Such a limitation of the power would operate rather as a license to, than a prevention of fraud. The power of imprisonment, to be effectual, must be co-extensive with the contumacy of the wrong-doer. The object, in this case, is not to punish for an *act done*, in contempt of the Court, but to compel the doing of an act necessary to the administration of justice. To apply the 5th specification of section 242 to the latter power would render it nugatory. To restrict its application to the former power gives it a salutary and rational operation, and we, therefore, adopt that construction.

The judgment below is affirmed.