TINDALL *v.* NISBET, clerk.  TINDALL *v.* WESTCOTT, sheriff.

1. A person who has, by the order of a court of competent jurisdiction, been appointed receiver of the property of an insolvent debtor, becomes an executive officer of the court which appointed him, and the property received by him, or the money arising from its sale, is in custodia legis.

2. If a receiver has been directed by the court to deposit a fund arising from the sale of property of the debtor, in banks, subject to be withdrawn only on his check when the same has been countersigned by the judge presiding in the court which appointed him, and, in violation of his duty and in disregard of the order of the court, the receiver obtains such funds from the banks, on checks not countersigned, and appropriates the same to his own use, then, regardless of the question whether or not the bank is liable for such wrongful payment, such receiver is in direct contempt of the court, whose officer he is, and he may be attached and punished for contempt in disregarding the orders of the court, and also for a failure or refusal, when so ordered, to pay into court the fund so misappropriated.

3. A creditor prima facie entitled to participate in the fund so withheld is a proper party to move an attachment against the defaulting receiver ; and in the absence of any such motion, the judge presiding, on information derived from any source, should cause proper inquiry to be made as to the facts, and, if found to be true, take proper steps to compel the return of the money.

4. The high degree of care proper to be exercised in the preservation of funds

arising from the seizure of the property of a citizen requires that a receiver entrusted with such a fund should be held to a rigid accountability ; and if, on proper order, he fails or refuses to deliver the same, it is the duty of the court to compel him to do so by the use of all lawful means, and to that end it is not illegal to adjudge him to be in contempt for such failure, and imprison him, nor to continue such imprisonment, for the continuing contempt in refusing to deliver the money, for such a time as may be necessary to compel its production.

(a) After he has been adjudged in contempt, and imprisoned for a refusal to deliver the fund, he will not be discharged under a writ of habeas corpus, sued out before another judge on the ground that he is unable by reason of his poverty to comply with the order, but it rests in the sound legal discretion of the judge who committed him, or who is presiding in the court which committed him, to determine whether it is or is not in the power of the receiver to restore the fund.

(b) Whether the receiver is or is not unable, by proper effort, to restore a fund entrusted to his keeping as an officer of the court, and which he has willfully misappropriated, is, both at common law and under our statute, a question which may be determined by the presiding judge, and is not one which is required to be submitted to a jury.

5. The receiver, in effect having admitted a misappropriation of the fund committed to his safe-keeping, was in any event in contempt, and, without regard to the fact of the disqualification of the presiding judge who passed the order requiring him to pay the fund into court, was subject to be held therefor by the judge who heard the case. Under the facts of this case, as shown by the record, the receiver will not be heard to urge such disqualification.

Argued June 19, — Decided July 23, 1901.

In Bibb superior court. Rule for contempt, before Judge Candler, March 5, 1901. Habeas corpus, before Judge Lumpkin, March 19, 1901.

On December 22, 1893, L. E. Culver, H. C. Tindall, and J. C. Van Syckel filed in Bibb superior court a petition against the Macon Hardware Company, certain named banks, and other persons. The petitioners alleged that they owned all the capital stock of that company, a private corporation, which had become insolvent and unable to continue business; that it desired to surrender its charter; and that foreclosure of mortgages it had executed was imminent. Injunction and receiver were prayed for. On January 9, 1894, upon interlocutory hearing, Judge Griggs presiding, an injunction was granted as prayed, and H. C. Tindall was appointed permanent receiver of all the assets of the company. The court's order set forth his powers and duties, providing, among other things, that his compensation for his services as receiver should not exceed $2,000; that he should sell the goods of the company in a specified

way; that he should give a bond of $25,000 for the faithful performance of his duties; that he should file a complete inventory and schedule of the property, and monthly statements of sales and amount of money on hand; that he should daily deposit at interest, in four named banks in Macon (they being among the parties defendant) all money received, in certain proportions, in his name as receiver; and that no checks should be drawn against such deposits, except in his name as receiver, countersigned by the presiding judge of Bibb superior court, save as to checks for expenses specifying for what expenses drawn. On July 5, 1895, an interlocutory decree was rendered, Judge Hardeman presiding, that the receiver pay to the mortgage creditors of the company, among whom were the four banks already mentioned, thirty per cent. of the principal of their debts; that the amounts previously drawn by the receiver as his salary be approved, and that he continue to draw salary at the same rate for one month longer; and that by September 1, 1895, he file a report of his acts under this decree. On August 31, 1896, Judge Felton passed an order that the receiver pay out none of the money then in his hands until further order of the court. On January 28, 1901, Judge Felton ordered that the four banks report to the court, in writing, the amounts deposited in each, when deposited, the amount paid out by each, by what authority each payment was made, and the amount of interest due by each; and further ordered that the receiver file, on or before February 18, 1901, a full report of his acts, setting forth the actual amount of money in hand and in what banks it was deposited, with the amount in each bank, and the amounts of interest collected and due; also the amount paid out to each creditor, and the amounts received from sales of properties and collected from all sources, stated separately. The reports required of the banks were filed; and on February 18, 1901, Judge Felton passed an order, reciting that the receiver had not filed his report pursuant to the order of January 28, and ordering him to show cause, on February 20, why he should not be adjudged in contempt for failure to file the report. He showed for cause, that he was engaged as trustee of a bankrupt estate in Milledgeville from January 28 until February 15, and had expected to prepare the report on February 16, when he found that it was impossible to comply with the terms of the order within the time limited; that he had previously filed eighteen reports, made

up of thousands of items, and showing in detail all of his receipts and disbursements from the time of his appointment to June 1, 1896; that a consolidation of all of these would involve practically as much time and labor as was required in preparing all of them; and that all of them had been of file for five years, no exception had been taken to any of them, and no suggestion of incorrectness therein had been made.　He prayed that the order of January 28 be modified so as to require of him only a statement of his receipts and disbursements since January 1, 1896; and that he be granted further time to prepare such statement.　On February 20, Judge Felton adjudged that this answer was insufficient to excuse the receiver for his failure to obey the order of court, that the receiver was in contempt, and that his punishment would thereafter be fixed.　It was further ordered that he report on the next day in accordance with the requirement of the order of January 28, and " that he report what amount of money is in his hands or in the banks, what checks he as receiver has drawn on said fund in bank, and by whose authority each check was drawn, and what amount he has collected which was not by him deposited in bank, and the purposes for which the checks were drawn upon the funds in bank, with a statement of his receipts and disbursements since June 1, 1896."　Pursuant to this order the receiver filed a report referring to the eighteen reports previously made by him, which showed the amounts of his receipts and disbursements up to June 3, 1896, since which date no property or money had come into his hands. The report then proceeds as follows:

"The aggregate receipts, as shown by said reports, is $61,407.85, and the aggregate disbursements is $41,918.18.　The fund on hand in said cause on June 1st, 1896, was $19,489.67.　Since the report of June 1st, 1896, the receiver has made disbursements, pursuant to the orders of court, amounting to $1,745.10.　All of said funds were deposited by the receiver . . in the depositories designated by the court. . .　The receiver has not drawn any checks on said fund in any of said depositories since June 1st, 1896, by any order of the court in said case, except for the disbursements above enumerated, nor has the receiver since said date presented or caused to be presented to any of said depositories any checks countersigned by the court, nor has the receiver disbursed any of said fund in said cause since said date, except as above stated.　He has also

on deposit in one of these four banks, to his credit as attorney for preferred creditors, the principal sum of $3,968.61. All of said depositories obligated themselves to pay interest at the rate of five per cent. per annum on said funds deposited by the receiver. Three of the depositories have advised the receiver that the interest due by them aggregates $4,883.05. The receiver is informed that the depositories of the court have reported to the court the amounts in their hands, including principal and interest, to the credit of the receiver, . . to be $20,114.27. Said reports of said depositories show an apparent deficit in the funds deposited by your receiver in the sum of $6,481.96. . . Your receiver shows that said depositories have, or should have, to the credit of the court in this cause, the entire balance above shown to be on hand, to wit, the sum of $26,-596.23. From time to time since June 1st, 1896, the receiver has drawn his individual checks on each of the four banks, for sundry amounts and purposes. Such individual checks so drawn may have been charged by said banks against the funds deposited in said banks as depositories of the court in the cause, to the amount of $6,481.96, and to such erroneous charges of such individual checks against said fund the apparent deficit above referred to is probably due. If it be true that such individual checks have in fact been charged against said fund in said banks, your receiver shows that it has been improperly done, neither your receiver nor this court having given said banks any authority to charge said checks against said fund, and said banks are not entitled to any credit for any charges so made by them against the funds deposited in this cause. Your receiver avers that the payment of his individual checks by said banks was the mere extension of credit by said banks to your receiver in his individual capacity. In the presentation of said checks your receiver made no representation whatever to either of said banks that said checks were drawn pursuant to any order of court in said cause. Wherefore your receiver avers that said banks have no authority in law to charge against the funds deposited with them any amounts which said banks saw fit to disburse as aforesaid, and that said depositories now have, or ought to have, to the credit of the court and the receiver in said cause, and to the credit of the attorney for preferred creditors, the aggregate sum of $26,596.23. The receiver has expended the sum of $375 for premiums paid the surety on his bond as receiver, which amount he prays may be allowed by the court as a part of the expenses incident to said receivership."

On February 22, the case of Culver et al. *v.* Macon Hardware Co. et al. was called for trial. Judge Felton was disqualified therein, on account of relationship to a stockholder in one of the four banks, a party defendant. He desired not to try the case, but did so at the request of counsel for all the parties thereto, and upon their waiver of the disqualification, first inquiring if there were any objection. The receiver was present. Verdict and decree were rendered, fixing the rights of the various parties to the cause. There was nothing in the verdict in any way determining the liability of the receiver. The decree contained a provision that the receiver was chargeable with $26,596.23 ; and it was ordered that of this amount only the sum of $20,114.27 be distributed at that time under the decree. The receiver was ordered by the decree to pay the balance to the clerk of the court, less $375 allowed him as premium paid for his bond, this balance when so paid to be distributed to the creditors in the manner previously set forth in the decree; and the case to remain open for such further decree as might be rendered, until the full amount of money in or to be brought in court should be distributed. On the same day Judge Felton ordered that the banks transfer to the credit of the clerk of the court the amounts admitted by them to be on deposit to the credit of H. C. Tindall as receiver and as attorney for preferred creditors, and pay out the same only on checks of the clerk, countersigned by the judge; and the sum of $20,114.27 was so transferred. Upon the rendition of the decree just referred to, the presiding judge inquired of the receiver whether he had "the money in hand, the $6,000, to pay." The receiver answered in the negative. The judge then directed that a rule issue against him to show cause, on February 25, why he should not be attached for contempt in illegally drawing checks and withholding the fund and not paying it into court as required by the decree. A rule nisi issued; and the receiver pleaded that he should not be required to answer, and moved that the rule be discharged, on the ground that Judge Felton was disqualified to preside in the case of Culver et al. *v.* Macon Hardware Co. et al., or to issue any judgment, decree, or order therein; that respondent had not consented for said judge to preside or waived his disqualification; and that respondent was not a party to the decree on which the rule was based, and had no opportunity to plead therein. On February 27, upon a petition brought in the

name of the clerk, Judge Candler ordered that the receiver instantly pay over the sum of $6,106.26 to the clerk, pursuant to the decree of February 22, and in default thereof that he show cause, on March 1, why he should not be adjudged in contempt and be punished for his failure so to pay; and that he further show cause why he should not be punished for drawing money deposited in the banks, without having the checks countersigned by the judge of the superior court.    Upon the call of this rule for hearing on March 1, the receiver submitted a motion to vacate so much of the decree of February 22 as imposed upon him any duty or liability or adjudicated any of his rights, on the following grounds : (1) The disqualification of Judge Felton, which was never waived by movant. (2) Movant was not a party to the record in which the decree was rendered, and was not heard or given an opportunity to be heard to show cause why he should not thereby be required to pay over the sum in question.    He avers that the decree violates the constitution of the United States, in that it deprives him of property without due process of law; and that he has never had his day in court.    (3) The decree is void as to him, for that it was rendered without any evidence going to show any liability upon him for the sum decreed to be chargeable against him.    He denies that his report of February 21, 1901, represented to the court that he was chargeable with $26,596.23 or any other sum, but avers that it showed he was not chargeable with any of the funds in the cause, and that he did not have any of said funds in his power, custody, or control, but that all of them were in the custody of the four banks, the official custodians of the court, as shown by the decree of January 9, 1894, and the orders and decrees subsequently rendered.    (4) The decree is not predicated upon the verdict of the jury, or any finding of the court on any issue properly made against him as to his liability as receiver.    His accounts as receiver have never been audited by the court, and he has never been called on by the court for an accounting of his acts, in the manner provided by law for the ascertainment of the state of his accounts and of his liabilities as receiver.    And he avers that the decree fixing his liability as receiver was rendered ex parte and without due process of law, and therefore is void, because not authorized by the record, and because it violates the constitution of the United States.

The court declined to issue a rule nisi on this motion or to pass upon it at the time it was presented.

The receiver then submitted a motion to require the attorneys, whose names were signed to the petition of the clerk to produce and prove the authority under which they appeared in said matter, and to disclose the name of the person or persons who employed them to appear and file the petition. One of these attorneys stated that the case was proceeding in the name of the clerk because the order of court directed the receiver to pay the money to the clerk, and that he and the other attorneys were appearing to represent their clients, creditors of the Macon Hardware Co., who were entitled to a large portion of the fund in the hands of the receiver, if it could be brought into court. The court refused to allow counsel for the receiver to examine the attorney who made this statement; and refused to require further proof that the attorneys appearing for the rule had authority from their clients to appear therein; and refused to allow counsel to introduce the clerk to show that he had not employed these attorneys or authorized them to bring the rule; and denied the motion of the receiver.

The receiver then filed a demurrer and an answer to the rule. The movant filed a traverse of the answer, and the receiver demurred to the traverse. His demurrers were overruled. Briefly stated, the defenses he set up were as follows: The petition for the rule does not allege that he was ever served with the decree of February 22, or that he ever had knowledge of it, or that any demand was ever made by or for the clerk for the sum decreed to be chargeable to respondent, or that he was a party to the cause wherein the decree was rendered, or any facts showing that the court had jurisdiction to render the decree; nor does the petition set forth a copy or the substance of the decree, so that the court and respondent may be properly advised of the matters therein contained, and of the duties and liabilities imposed on respondent thereunder. The petition shows that the money alleged to have been decreed to be in the hands of respondent was and is, in law and in fact, in the custody of the four banks, subject only to the orders and checks of the court, and not in the custody, power, and control of respondent; that these banks were the official custodians of the court for said funds; and that if they paid checks of respondent which were not authorized by the court and countersigned by the judge, they could not charge said checks against said funds, and were and are chargeable with the same. The clerk had no right or authority to file or pros-

ecute the petition, because he was not a party to the decree of February 22, or to the cause in which it was rendered, and he had no interest therein or in the money, and he was not authorized or directed by any order of court to bring the petition. The same is verified only to the best of his knowledge and belief. It does not show that the decree of February 22 was rendered by the court having jurisdiction of the parties and subject-matter, and upon pleadings which authorized it; and so it does not appear that said decree was due process of law. The petition is a summary proceeding to require of respondent an accounting of his acts as receiver; it is illegal for that purpose; the clerk is a volunteer, and had no right to require an accounting of respondent.

Respondent denies that in his report of February 21 it is shown that he had any sum in his hands as receiver, and that by the decree of the next day he was required to pay to the clerk $26,221.23. He admits that he has not paid the clerk any sum, but denies that his failure to do so is in violation of any legal and proper decree of the court. By the order directing him to deposit in the four banks the moneys arising from sales of property he was rendered powerless to withdraw said money from these banks, except upon checks countersigned by the judge; and by this order these banks were made the official custodians of the court for said funds, and he was relieved from all liability for the care and keeping of the same after such deposit, and said depositories were chargeable therewith. On February 28, 1901, he as receiver drew his checks on said custodians, in favor of the clerk of the court, for the balance of the funds with which they are chargeable, and presented them to Judge Felton with a request that he countersign them, so that he might deliver them to the clerk. Judge Felton refused to countersign them, and thereby rendered respondent unable to comply with the orders of the court for the distribution of the fund. He exhibits these checks, tenders them to the court, and prays that they be countersigned by the presiding judge so that he may deliver them to the clerk. The decree of February 22 is void and not binding on respondent, because Judge Felton was disqualified to render it; and because respondent was not heard or given an opportunity to be heard, or required to show cause why it should not be rendered. He moves that it be set aside, and that the rule predicated thereon be discharged; and he demands a trial by jury

on the issues hereby made. The answer then discloses certain disbursements made by the receiver, but not previously reported or allowed, and claims that the banks are chargeable with the balance of the fund, which is not more than $6,021.17. They were charged with notice of all of the orders and decrees of the court; they accepted the funds upon the conditions and liabilities fixed by said orders and decrees; they were parties to the record, at interest in the cause, were represented by counsel, and had actual notice, by their officers, of the decree of January 9, 1894. The funds were on special deposit, subject to the order of the court, and not subject to the control of the receiver. None of the funds were disbursed by him as receiver, pursuant to the orders of the court prior to February 22, 1901, except as heretofore shown by his reports filed as receiver and in his answer to the rule, nor has he presented or caused to be presented to any of said depositories any check countersigned by the court for the disbursement of the funds, except for disbursements ordered by the court. Said depositories have no authority to charge against the funds deposited with them any check drawn by respondent on them, unless it was drawn pursuant to the order of the court and was countersigned by the presiding judge. Respondent denies that the sum in question was in his custody or control when the decree was rendered, and denies that he was or is chargeable with any part of it. The clerk has made no demand on him for said sum or any of it, before or since the order of Judge Candler of February 27, which was issued without his being given an opportunity to show cause against its issuance, and he has not been given any reasonable time to comply with it. It was issued after final decree by which all of the rights and liabilities of the parties to the cause were fixed and the legal proceeding was terminated.

Respondent avers that, when the decree was rendered and the rule issued, the funds arising in the cause for distribution under the decree were not in his custody, power, or control, but were in the custody and keeping of the depositories of the court, which held them as officers of the court. He has never been the custodian of the court for said funds since they were deposited in the banks designated by the court and constituted its custodians. When the decree was entered and the rule issued the fund was in court, being in the custody of its depositories; or, if not in their custody,

they were chargeable therewith.    The parties to the cause have recognized and treated the banks as depositories of the court and as the custodians of the fund.    The amount for which they conceded liability has been distributed without the aid of respondent, although he was receiver at the time of the distribution.    Had he been chargeable with the custody and care of the funds, he would have been entitled to his poundage or commission for compensation for his risk incident to his responsibility for the fund; but by the orders and decrees in the case the court and the parties have denied him any poundage or commission in this behalf.    He was responsible with no diligence in the care and keeping of the money after it was deposited in the banks; if it had been lost by their failure, he and the surety on his bond would not have been liable for such loss.

He admits that he drew various checks on three of the banks between September 15, 1896, and February 15, 1899, and added after his signature on them the words "Receiver for Macon Hardware Company," or some such phrase, and presented or caused to be presented said checks to said banks, and that they were paid; but he denies that they were chargeable against said fund, and avers that the banks had no authority to charge them against the funds in said cause in the custody of said depositories.    He made no representations to the banks that said checks were drawn in said cause or against the funds therein, or pursuant to any order or decree of the court.    They were not countersigned by the presiding judge; nor did he represent to the banks that the payment of these checks would be by them a disbursement of the funds of which they were the custodians.    They were not authorized by said checks to disburse any of the funds, and can not relieve themselves from liability, or deny that said funds are in their custody, by urging the payment of the checks.    These were respondent's individual checks, and their payment was an extension of credit to him.    He did not draw them in his capacity as receiver of the court, but as personal, individual acts disconnected with the cause and not related to any duty upon him as receiver; for the court's orders and decrees had limited his powers as receiver, by requiring him to relinquish his custody of the funds to the court's depositories.    Nor did he violate any order of court by adding to his signature of the checks the word "receiver" etc.; for the checks were not drawn against said deposits, but against corporations doing a general banking business, and in legal effect

were the individual checks of respondent. The order of court as to the drawing of checks on funds in the cause was intended to, and did, fix the terms under which the banks were made the depositories of the court and the custodians of the funds, and were not intended as limitations on the individual acts of respondent, and did not amount to an injunction against him in reference to drawing checks, or subject him to punishment for drawing checks which were absolutely void as against the funds deposited with the custodian of the court. He is not accountable to the court for any of the funds in the cause which were so deposited, but he is civilly liable only to the banks; and this liability can not be determined in this summary proceeding for contempt, but only by a proper action by the banks, upon which he is entitled to a trial by jury; nor can he, by such summary proceeding, be required to pay said sum to the clerk, and thus relieve the banks of their legal liability. He denies that the money ordered by the decree of February 22 to be paid over to the clerk, or any part thereof, was then or is now in his possession, power, custody, or control; and he avers that he was then and is now, by reason of his poverty, utterly unable to comply with the decree requiring such payment. The funds in the cause were loaned by the court to the banks; and he has never demanded of the banks any repayment of said funds, nor any disbursement of them, nor any accounting, except pursuant to the orders of the court. He demands a trial by jury.

Upon the submission of his answer, and also at the conclusion of the evidence, the receiver tendered to Judge Candler the checks he had drawn and tendered to Judge Felton on February 28, with a request that they be countersigned. This was refused. The receiver demanded a trial by jury of the issues of fact which he claimed to have been raised by his answer to the rule. This also was refused. The receiver objected to that part of the testimony of Judge Felton, introduced by the movant for the rule, which stated that he refused to countersign the checks offered to him by the receiver on February 28, because he knew the receiver did not have the money in bank, and was not accustomed to signing checks on banks where he had no funds; the ground of objection being that this was a conclusion of law dependent on the issues of fact and the questions of law involved in the adjudication of the rule, and that the testimony was irrelevant and immaterial. The ob-

jection was overruled. The receiver objected to the admission in evidence of the decree of February 22, on the grounds, that he was no party to the cause in which it was rendered; that nothing in the verdict on which it was based authorized the rendition of any decree against the receiver; and that Judge Felton was disqualified to enter the decree. The objection was overruled. Error was assigned upon each of these rulings, as well as upon each of those noted heretofore in this report. It appeared beyond doubt that the receiver was short in the sum of $6,021.17, drawn by him from the banks and not accounted for in any way. The court made the rule absolute, requiring him to pay at once to the clerk the sum just named; and ordered that he be committed to jail for contempt of court, and remain in custody until he can show that he has purged himself of the contempt by repaying the fund adjudged to have been misappropriated by him, and that he has been sufficiently punished, or by showing that he has been sufficiently punished and is unable, by reason of his poverty, to repay said amount. Error is assigned, because this judgment is contrary to law and unsupported by evidence; because the receiver is deprived of the right of trial by jury; because he is imprisoned for debt; because the judgment contravenes the statute limiting the power of courts to punish for contempts; and because it does not adjudge the specific acts of contempt of which he is guilty, nor adjudge that it was in his power to perform the acts required of him.

On March 14, 1901, H. C. Tindall presented to Judge Lumpkin a petition for habeas corpus, the writ being directed to the sheriff having him in custody, and being made returnable on March 19. Attached to the petition was a copy each of the judgment of Judge Candler committing the petitioner to jail, the petition of the clerk for the rule against Tindall, and the portion of his answer to the rule which denied that the money ordered to be paid by him to the clerk was in his possession, power, custody, or control on February 22, or was at the time of making the answer, and which averred that he was, by reason of his poverty, utterly unable to comply with the decree of court requiring him to pay the money to the clerk. The petition for habeas corpus alleges, in brief, that Tindall is imprisoned without lawful warrant, under pretext of the commitment of Judge Candler; that the decree on which the petition for the rule and the rule are predicated is illegal and void, because

(1) Judge Felton was disqualified (as heretofore reported), and (2) because Tindall was not a party to the cause when the decree was rendered, and was not heard or given an opportunity to be heard, or required to show cause why the decree should not be rendered; that he was denied a trial by jury on the issue made by his answer to the rule, contrary to the constitution and the laws enacted pursuant thereto, and therefore the judgment finding him guilty of contempt and committing him to jail is illegal and void; that it is illegal and void also because the rule required him to show cause why he was not in contempt in failing to pay to the clerk the sum of $6,106.25, whereas by the judgment he was adjudged guilty of contempt for failure to pay to the clerk $6,021.17, when he has never been ordered or required to pay the latter sum to the clerk by any decree or order of said court, and therefore would not be in contempt in failing to pay it to the clerk; that the commitment under which he is held is unconstitutional, as being imprisonment for debt, and as being beyond the power of the superior court, it being beyond the limit prescribed by the statute passed pursuant to the constitution, for that he could not be lawfully confined for a period longer than twenty days; that under the constitution and laws he has a right to purge himself of the contempt by paying $6,021.17 to the clerk, and is thereupon entitled to a discharge from custody, but the commitment denies him this right, etc. He further alleges, that his commitment was made in utter disregard of his showing that he had not in his possession, power, custody, or control the sum of $6,021.17 or any part of it, which fact he says was a complete bar to the infliction of any punishment for disobedience of the order of court requiring him to pay said sum to the clerk, and entitled him to a discharge from custody. He further says that he has been sufficiently punished for the acts of contempt adjudged against him; and that he is unable, by reason of his poverty, to pay to the clerk the sum named.

To this petition the sheriff filed a demurrer and an answer, which need not be recited. At the hearing Tindall testified that he had not the money ordered to be paid over by him, and had no means of procuring it. The other material facts shown by the evidence are already sufficiently reported. Judge Lumpkin denied the prayer for discharge, and remanded the petitioner to the custody of the sheriff, under the judgment of incarceration, to be dealt with as by

law provided; filing the opinion hereafter set forth. This judgment was excepted to, on the grounds already appearing.

*John P. Ross*, for plaintiff in error.    *N. E. Harris, C. P. Steed, Anderson & Grace*, and *Hall & Wimberly*, contra.

LITTLE, J.    There are two cases pending in this court, in each of which practically the same principles of law, resting upon the same facts, are involved, and the same person is the plaintiff in error. The first is that of Tindall *v*. Nisbet, clerk, in which a judgment rendered by Judge Candler, of the Stone Mountain circuit, holding the plaintiff in error to be in contempt of the superior court of Bibb county, is sought to be reversed.    In the second case, which is entitled Tindall *v*. Westcott, sheriff, the same plaintiff in error seeks to reverse a judgment rendered by Judge J. H. Lumpkin, of the Atlanta circuit, which refuses to discharge the plaintiff in error from the custody of the sheriff of Bibb county, under the commitment made by Judge Candler.  These two cases were by consent presented together in this court, and the adjudication now made determines each.    After a careful examination of the record, and a consideration of the alleged errors which the faithful and able counsel representing the plaintiff in error insists were committed on the hearing of the cases in the superior court, we are forced to the conclusion that no error was committed by Judge Candler in the rulings made in the contempt case, nor by Judge Lumpkin in the hearing of the writ of habeas corpus; and we affirm the judgment rendered in each of said cases.    Many of the rulings made directly by Judge Candler were necessarily passed on by Judge Lumpkin on the hearing had before him.    Without passing, in detail, on the several rulings made by Judge Candler which were not involved in the petition seeking a discharge from the custody of the sheriff, if indeed there be any, it is sufficient to say that in our judgment no error which entitles plaintiff to another hearing on the proceedings to attach him for contempt, or to set aside the judgment finding him to be in contempt of court and ordering his imprisonment, was committed.    In passing on the several questions raised on the hearing before him, his honor Judge Candler, in rendering his judgment, did not, in detail, elaborate the principles of law upon which his decision was made to rest.    But in formulating the judgment by which he refused to discharge the plaintiff in error from the cus-

tody of the sheriff, his honor Judge Lumpkin deals at length, and in detail, with the legal questions involved in the consideration of the case on its merits. And the opinion rendered by this able judge, which we find incorporated in the record, seems to be so decisive of every material question raised, and so clearly and forcibly expresses the view which we entertain of the law relating to these questions, that we incorporate it herein, and adopt it as satisfactorily establishing the correctness of the conclusions which we have reached, and which are announced in the headnotes to these two cases. The opinion so rendered is as follows:

"In passing upon a proceeding seeking to obtain a discharge from custody by writ of habeas corpus, it is my general custom simply to order a discharge, or to refuse it and remand the prisoner. But the present case is one of such importance and interest that I feel it to be the duty of the presiding judge to do more than this, and to give some expression of his views on some of the principal points involved. This is indeed an important case. It is important to the prisoner, because it involves his liberty. It is important to the courts, because it involves the question whether they can have the assets which they take into their custody preserved, and see that their receivers honestly and faithfully discharge their duties and properly dispose of property and funds entrusted to their keeping, or whether they can not; in a word, whether they can control their receivers, or whether their receivers shall control them. It is also of interest to the judges to know whether, after one of them has carefully and patiently considered the conduct of a receiver and has adjudged him in contempt, another judge of like court will promptly upset his judgment and turn the prisoner loose on a writ of habeas corpus. Of course, if the detention is illegal the prisoner will be promptly discharged, but if it is a matter of discretion, or of reviewing what the judge who rendered the judgment has done, the second judge should not be over-ready to interfere. Such appeals should be more naturally addressed to the judge whose judgment is sought to be modified or revoked, or to some other judge with proper jurisdiction, by petition, rather than to another judge by petition for habeas corpus. This case is also of great interest to the public. When creditors or others institute proceedings under which a receiver is appointed, they and the defendants would like to know whether such appointment is a means

of preserving and safely keeping the property and funds involved, or whether it is simply a proceeding to take the property of others and turn it over to a receiver for his own use; and whether at the end of the litigation they will get what the court placed in the safe-keeping of its officer, or whether they must be satisfied with the information that the receiver has misappropriated their funds, but that, inasmuch as he says that he has spent them, the court who appointed him is helpless and powerless to compel the restoration, or faithfulness and honesty on the part of its appointee. It must present to the mind of the litigant a rather cheerless idea of law and courts if he were told that the court could take his property or money out of his hands and place it in the hands of a receiver for safe-keeping, but could not see that it was safely kept; and that he must be quite content at the end of the case to get nothing, if the receiver should step up and admit that he had misappropriated the funds, but defy the court to make him perform his duty, merely saying in effect that he had taken the money, but he had also spent it, and really did not see how he was to deliver it to those to whom it rightfully belonged, or as the court should direct. The truth is, that in these days, when there is so much of peculation and dishonesty in positions of trust, for a court to accept any such excuse and allow any such precedent to be set for trustees and receivers, would seem to me little short of judicial outrage upon litigants and the public. See *Wimpy* v. *Phinizy*, 68 *Ga.* 188. That a thing may be a crime does not also prevent it from being a contempt. Justice should ever be tempered with mercy, but to temper justice is not to destroy it, or to weaken it to the point where sentimentality for a faithless trustee or a criminal shall encourage crime in others or work a positive wrong to the innocent and injured. Receivers might as well learn first that misappropriation can have but one end — the jail. In what I say, it would seem needless to remark that I am actuated by no sort of feeling against this prisoner. Personally he was wholly unknown to me. If I had a feeling towards him it would be one of pity and sorrow. To hear of a fond wife and innocent children who must suffer on account of his wrong is touching, but it is quite possible that some of the creditors in the equity cause also have wives and children; and it is one of the saddest things in life that a man can never do wrong and suffer alone. The web of human lives is so

interwoven that no individual thread can be drawn out to itself without straining and tearing those intertwined with it.

" Many of the points made by the petitioner have been passed upon and concluded by the judgment of the Hon. John S. Candler, before whom the rule against the receiver was tried, and who adjudged him in contempt and sentenced him to jail. To have so adjudged must necessarily have covered and concluded every fact necessary to such adjudication. A writ of habeas corpus is not a means of reviewing a judgment, or of considering whether there were any errors or irregularities in it; but the judgment must be so far void that the detention under it is illegal, in order to authorize a discharge under this writ. A motion to modify or a writ of error may reach errors or irregularities, if any exist. To a large part, if not all, of the petition I might have sustained the demurrer of respondent; but, in the interest of a full and thorough hearing, wherever a question of liberty is at stake, I preferred to reserve the rulings on the law questions so raised, and decide the case after having before me all that might be lawfully offered. To illustrate, in Judge Candler's judgment it is stated that it is adjudged that the receiver 'has been and is now in contempt of court,' and it is ordered and adjudged that he 'be required to at once pay to the clerk of the court the sum of $6,021.17, the same being the amount which is hereby adjudged to be in his hands, with which he is properly chargeable under the evidence, and for which he has failed and refused to account.' That such judgment is conclusive unless reversed or set aside, see *Thweatt* v. *Kiddoo*, 58 *Ga.* 300. It is suggested that the decree directing the receiver to pay over the funds to the clerk was not based on pleadings or the record. I do not understand that a judge can give no direction to a receiver except upon pleadings of parties and findings. The receiver is his officer and subject to his directions and findings. Suppose he deemed a certain action of the receiver necessary for the preservation of the fund, is he powerless to order it unless somebody presents pleadings about it? Must he induce some one to plead and get a judgment before he can order the receiver to do some necessary thing? A verdict or auditor's report rarely, if ever, undertakes to direct the receiver what to do. It finds debts, amounts, and priorities, and leaves the judge to decree how and when the receiver shall pay out or deal with the fund in his hands,

having in view such finding. It is said that the order requiring the deposit by the receiver in banks was a special order, and provided how the funds should be drawn out; and that the banks were liable if they let it be taken out otherwise. It may be said that this was before Judge Candler and must have been passed on by him. But if it were an open question, is it possible that a receiver can say to the court, in effect, ' You told me to deposit, and instructed me not to draw out the fund, save only to pay expenses, except in a certain way. I violated this instruction, and got the fund and used it; but possibly the banks are liable for having joined or aided me in this malfeasance, or for having allowed it wrongfully, and therefore the court is powerless to deal with its officer?'

"It is urged with great earnestness and ability that Judge Felton was disqualified from presiding in the equity case in which the receiver was appointed, and was disqualified from making the decree which contained a direction to the receiver to deliver the fund to the clerk; that the decree as to the receiver was a nullity; that the rule was dependent on it, and, being dependent on a nullity, must itself be void. It is quite true, if a proceeding is dependent for its own validity upon a nullity, it must fall. It may be doubted whether the proceeding before and judgment of Judge Candler were wholly dependent upon Judge Felton's decree. But suppose they were, is that any ground of defense to the receiver? In the first place, this same man was a member of a firm who were plaintiffs in the petition under which the receiver was appointed; they saw the case steadily proceed, without objection; this petitioner himself heard Judge Felton discuss his disqualification and decline to preside in the case unless by consent or agreement, heard the judge, when urged to preside, inquire if there were any objection, sat silently by and saw him preside and make the decree. Can he be heard to say that Judge Felton was disqualified? It is said that he was only a party to the decree as a creditor and not as a receiver, and hence was only bound or estopped in the former character. But he is the same man, and he saw and heard, and said not a word in any character. Even if a judge who was disqualified by reason of relationship to try a case should preside and render a decree, his disqualification could not be set up as a ground for a writ of habeas corpus. *Daniels* v. *Towers,* 79 *Ga.* 785; *Shope* v. *State,* 106 *Ga.* 226. Again, this very receiver, as receiver, made a report

to the court, on February 21, 1901, in which, among other things, he set out that he had made certain expenditures in paying premiums on his bond as receiver, and prayed that they be allowed as part of his expenses; and they were allowed on February 22, 1901, in the very decree which the said receiver now seeks to attack as void. Can he apply to the judge for action, obtain the thing he asks, and then attack the decree which he thus in part obtained, as void on the ground that the judge was disqualified to act? If he was not estopped when he heard the judge ask if there were any objections to his presiding and said nothing — if he was then listening only with his individual ear and was deaf in his official auricle, surely the proceeding just above stated estops him. Is it possible that a receiver can act under the orders of a judge, make a report to him, invoke and obtain action by him, and treat him as qualified to do everything in the case, and yet raise the question of qualification when it suits him? Is the judge qualified to do what suits the receiver, but disqualified to do what displeases him?

"It is also urged that the receiver was entitled to a trial by jury under the rule against him; and this is claimed both under the constitution and the acts of the legislature. This very question was before Judge Candler and was tried by him, and a writ of habeas corpus is not the mode of reviewing his decision. 15 Am. & Eng. Enc. L. (2d ed.) 176; People v. District Court, 46 L. R. A. 855. But aside from this, the constitution of 1877 (Code, § 5876) provides that 'The right of trial by jury, except where it is otherwise provided in this constitution, shall remain inviolate.' This provision confers no new right of trial by jury, but merely guarantees that 'the right of trial by jury [that is, the pre-existing or established right] shall remain inviolate.' Has there ever existed any right on the part of a receiver, who disobeys the orders of the court of his appointment and violates his duty, to demand a jury trial? He has never had any such right to be violated, and the constitution has no reference to any such matter. Through all the English practice and in all the practice under the various constitutions of this State, if any such right was ever allowed or established, I am not aware of it. 154 U. S. 447 (6), Brinson's case; 134 U. S. 31–40 (4), (5), Ellenbecker's case. In *Akers* v. *Veal*, 66 *Ga.* 302, it is held that 'A receiver, when called upon by the court to account for funds in his hands, can not command a jury to pass upon such accounts.'"

Similar rulings have been made as to equity cases. *Lamar* v. *Allen,* 108 *Ga.* 159–162; *Hearn* v. *Laird,* 103 *Ga.* 271–276. An attachment proceeding arising in the course of or incident to an equity case is itself very closely allied to an equity cause. *Hayden* v. *Phinizy,* 67 *Ga.* 758. Thus there is no constitutional right of trial by jury in this case. Is there any statutory right? Prior to the act of 1892, § 4046 of the present code had long stood on the statute books; yet no court ever supposed that under it a defaulting receiver was entitled to a jury trial.. Indeed, before the act of 1892, it was held that, even as to others refusing to deliver money to a receiver, there was no such right. *Ryan* v. *Kingsbery,* 88 *Ga.* 361 (3); *Kingsbery* v. *Ryan,* 92 *Ga.* 109 (3), 117; *Cobb* v. *Black,* 34 *Ga.* 162. Besides, the Supreme Court has in effect held that the limitations apparently sought to be placed upon the superior courts by that section, as to defining contempts, were unconstitutional. *Looney* v. *State,* 111 *Ga.* 168. In 1892 the legislature passed an act which is relied on as conferring on this receiver a jury trial (Acts 1892, p. 65, Code of 1895, § 4046). Whether or not this is an amendment by adding a proviso to an unconstitutional section, so far as the superior court is concerned, and if so, what effect it had, need not be discussed. Suffice it to say that, in my opinion, it was never the intention of the legislature by the act of 1892 to deal with cases of this character, or to apply that law to them. That act was passed to deal with cases where money was alleged to be in possession of a person who refused to turn it over to a receiver, and similar cases; but not to cases like this, in reference to failing or refusing to 'pay over' money. Now money which the court has in its possession or custody by its receiver has already been paid over. The terms employed show that the legislature did not contemplate a case where the fund is already delivered into the hands of the court's officer, and where the court gives direction to him.

"In *Akers* v. *Veal,* 66 *Ga.* 302–304, supra, it is said: 'Receivers are but the officers of the court appointing them, and they are required to account to the court for all receipts and disbursements of the fund received by them. They are not governed by the same rules that regulate the proceedings between parties litigant. Ordinarily they will not be allowed to make expenditures which will *materially reduce* the fund in their hands without the sanction of the court; and they should get permission as to such

expenditures before they are made, as they are always to be held to a strict accountability therefor.    A court, in passing upon the accounts of its receiver, should never ratify any expenditure which has not been necessarily incurred for the benefit of the estate entrusted to his care.    High on Receivers, §§ 798, 799.    The fund confided to a receiver is considered as being in custodia legis for the true owner, the court itself having the care of it by its own creature or officer, and who is often spoken of as the " hand of the court."    High on Receivers, § 2.    Hence, when this "hand of the court" is called upon to deliver and account for the fund, it shall not be permitted to reply that "I demand a jury to pass upon my stewardship before I surrender it." '    It seems clear that when money has already been 'paid over' to the receiver and is in custodia legis —in the keeping of this hand of the court, the legislature never dreamed that the court could not deal with its own legal hand without having a jury trial.    The jury is an important factor in court procedure; but it would indeed be a remarkable and humiliating spectacle if a court, having the fund in its custody through this creature or officer of the court, could do nothing save after a jury trial, with ensuing motion for a new trial and bill of exceptions.    To so decide would be to block efficient court proceedings, and to hold that the head can not control its own hand without the aid of a jury.    No such act has been passed; and if any such should be proposed, it should have the caption of ' A bill to be entitled an act to authorize and encourage misappropriation on the part of receivers.'    That the general words used in the act of 1892 are to be construed in the light of the purpose of the act, see *Lee* v. *Lee,* 97 *Ga.* 736–737.    Let it be noted that this receiver made no real denial of having committed a breach of duty.

" It is suggested that the limit of twenty days imprisonment provided for an act of contempt applies.    Not so.    A failure or refusal to comply with the order of the court to deliver or 'pay money or the like, or to purge the contempt, is a continuing contempt, and the court may pass judgment that its officer be imprisoned until he shall comply.    *Cobb* v. *Black,* 34 *Ga.* 162, 166.    It is a civil proceeding.    *Drakeford* v. *Adams,* 98 *Ga.* 722.    It is suggested that there are two things set out in the proceedings: one, disobedience in drawing the checks; and the other, refusing to pay the funds as ordered.    It is probable that both were closely allied and be-

came in a measure consolidated; but if the sentence for disobedience as to drawing checks were limited, the judgment of imprisonment for failing or refusing to pay funds is not so limited, and may be till payment or proper purgation and further order, or the like. The same thing may be said of the complaint that the sentence is indefinite.   In civil or remedial proceedings for contempt the judgment need not fix a definite time limit for its termination. *Cobb* v. *Black*, 34 *Ga.* 163–166; *Drakeford* v. *Adams*, 98 *Ga.* 722, supra; 7 Am. & Eng. Enc. L. (2d ed.) 68–69.   Even if this sentence were more than Judge Candler could have lawfully imposed (which I by no means wish to be understood as holding), and even if it could be conceded that he could only have sentenced the present petitioner for twenty days (which is not the law and is not conceded), still this prisoner has not been incarcerated for twenty days, even under his own theory, and he would have no right to discharge under writ of habeas corpus until his detention is illegal. In no event is it now illegal.   Is it possible that any one familiar with the law really supposes that the legislature intended to say that if a receiver should take and hold or misappropriate all the funds entrusted to his care, perhaps many thousand dollars, the court could not coerce him to perform his duty, but could only put him in jail for twenty days?   If the judgment of Judge Candler is in any respect irregular or erroneous, it may be corrected by a writ of error or motion to modify, but not by writ of habeas corpus.   Even if the sentence is excessive, which it is not, would it be ground for discharge on writ of habeas corpus?   15 Am. & Eng. Enc. L. (2d ed.) 171.

"Finally, it is said that there should be a discharge of this prisoner, because he testifies that he can not pay the sum required of him or comply with the order of the court.   There is no explanation of what he has done with the money, but only the bald statement that he is unable to pay it.   Shall receivers, sheriffs, and attorneys, who have funds entrusted to their care, be discharged by merely saying that they have spent the money which did not belong to them, and can not pay?   Surely not.   To wrongfully place one's self in such a position gives no right of discharge.   It is true that perpetual punishment is not contemplated; but a showing of inability does not give any actual right to terminate imprisonment, but addresses itself to the discretion of the judge.   In *Kingsbery* v. *Ryan*, 92 *Ga.* 114, it is said that ' If, as a result of the investi-

gation above referred to, it should unequivocally appear that Ryan in fact had no money when the demand was made upon him by the receiver (a possibility suggested by Judge Clarke in his opinion already alluded to), it would by no means follow that the judgment of contempt would be ipso facto set aside or made void.' See also *Wimpy* v. *Phinizy*, supra; *Harris* v. *Bridges*, 57 *Ga.* 407; *Smith* v. *McLendon*, 59 *Ga.* 527; 15 Am. & Eng. Enc. L. (2d ed.) 173. This and the next position really have no place in habeas corpus proceedings, and are not properly incorporated in them; but should be by petition to the court. But counsel on both sides stated that they were willing to have them considered as if no petition were addressed to the judge's discretion. The last ground urged is an appeal to the judge on the ground that the petitioner has been sufficiently punished and should be discharged. That any such position should be urged can only be attributed to the zeal of able counsel and sympathy for the prisoner's family. Of course, it can not be seriously expected that any conscientious judge will hold that less than two weeks in jail is a sufficient punishment for a receiver who, under Judge Candler's judgment, is wrongfully withholding some six thousand dollars. I would that I could, with due regard to the law and my duty, restore this man to his sorrowing family. The tears of his wife and the shame and suffering of his children appeal to deep-seated feelings of the human heart. But a judge has resting upon his shoulders a high duty, and he must act under the solemn sanction of his oath of office. He can not give way to sentiments of pity or of sympathy for those whom petitioner has brought to suffering, and do that which would set an evil precedent and perhaps work untold wrong to many people. When in fact this petitioner shall comply with the judgment of Judge Candler, or when, on proper proceedings, it may appear fully' and in fact that he can not do so, and the judge who may hear the case shall deem that he has been sufficiently punished, he may discharge the applicant if he so decides. But with a just appreciation of my duty, I can not do so now."

　　*Judgment in each case affirmed. All the Justices concurring.*