2864   EVANS *v.* LANE.

1. Large discretion is vested in the trial judge in habeas corpus cases. and this court will not interfere with his judgment on the law and the facts, unless his discretion is manifestly abused. Unless the finding is so manifestly contrary to the evidence as to indicate passion or prejudice, it will not be disturbed.

2. In every case where the custody of a minor child is concerned, the prime and paramount consideration is the welfare and happiness of the child. The judge who sees the witnesses and hears them testify has so much better opportunity than the appellate court for correctly determining as to this that it is scarcely possible in any case to say, as a matter of law, upon review, that the child's interests have been injuriously affected by the judgment awarding custody.

3. In awarding the custody of an infant child, the court may provide that the opposite party shall have the right to visit the child, or that the child shall have the right to visit a party to whom the court has refused to award its custody and consequent parental control. Likewise, in rendering judgment upon a writ of. habeas corpus and in awarding the ultimate custody and control of a child of tender years to its father, the court may order that it shall spend every alternate month with its maternal grandmother, and be delivered to her by its father for that purpose.

DECIDED FEBRUARY 15, 1911. REHEARING DENIED MARCH 1, 1911.

Habeas corpus; from city court of Sylvania—Judge Boykin. July 13, 1910.

*E. K. Overstreet,* for plaintiff in error.

*T. J. Evans, A. B. Lovett,* contra.

RUSSELL, J. Mrs. M. J. Lane sued out a writ of habeas corpus against J. H. Evans Jr., for the possession of Willie Evans, an infant daughter of the defendant, a little over two years old. The petitioner alleged, that the mother of the child, who was her daughter, died when it was three weeks old, and that the child was thereafter cared for and adopted by her with the consent of its father; that he had failed ever since the death of the mother of the child to provide necessaries for its maintenance, and that it had been supported and nursed in illness and in health by the petitioner and her children; that the child is delicate and requires the care of a physician, and that the petitioner is familiar with the condition of the child and its physical needs as no one else is. It is further alleged, that the child was fraudulently enticed away from the petitioner by the defendant, who has married a second time, and that his second wife is young and inexperienced in the care of children, not capable of caring for the infant in its present physical condition, nor familiar with its physical needs, and that the best interest of the child demands that its custody be immediately restored to its grandmother. Upon the hearing the evidence was conflicting. The defendant denied that he had ever surrendered the parental control of his child to his mother-in-law, but stated that she took it to take care of it temporarily; that he visited it frequently and left money with his mother-in-law and sisters-in-law sufficient to meet its needs, in addition to supplying it himself with some articles of clothing as well as with a cow. The evidence may be said to show that both the plaintiff and the defendant are financially able to care for the child. The testimony of the grandmother was that when Mrs. Evans, her daughter, died on the eighth day after the birth of the child she told "Jim" (the father) that she wanted the baby, and asked him what he was going to do with it. It does not appear that he made any decision at that time, though he said that if he could not keep it himself, he would rather she should have it than any one else. A few days afterwards, according to her testimony, the father told her that she could get the child, that she was at Mr. Henry McCall's, and the plaintiff sent for the infant. The

baby was quite sick at that time. The only other child of the defendant, a little older than this baby, had died before Mrs. Evans' death. The paternal grandmother of the infant was not able to take care of it, and the father asked his mother-in-law to send for the child two or three days after its mother died. There was testimony by other witnesses for the plaintiff that the defendant had told her in their presence that if he could not keep the baby himself, he would rather that she would have it than any other person on earth; this in response to her request that he give her the baby; and that after he had decided it was impossible for him to keep it, he requested her to send for it, which she did. A physician testified that he had treated the little girl for the past year or two, at the request of the grandmother, and the grandmother had paid him; that she was a very frail little baby, suffered with indigestion, and, when he was first called, it was in an emaciated condition; that its grandmother gave it the very best attention. These are the most material facts extracted from a voluminous brief of evidence.

As we view it, the evidence would have authorized the judge to award the custody of the child to either party. Doubtless he awarded to the father the ultimate, permanent custody and control of the child because the testimony of the grandmother in regard to the gift of the child by its father to herself was not as clear and definite as it might have been. Though she asked the father to give her the child, and though, after considering the matter, he asked her to send for it, his language at the time of the request was to the effect that he would rather that she would keep the child than any one else. It is true that, according to the testimony, he did not offer to pay the expenses for attention, medical and otherwise, nor nurse the child when it was sick. According to some of the testimony he did not even come to see it during one of its spells of very severe illness, but it was undenied that he at various times had given different sums of money to the grandmother to be expended for it, and that he bought some necessary articles for it, and gave the grandmother a cow, doubtless to be used in nourishing the child, and these circumstances would support the inference that when he told her to send for the child, that he would rather she should keep it than any one else on earth, he meant only to temporarily place the child in the keeping of its grandmother, and did not intend to relinquish his parental rights. The judge of

the city court adjudged the custody of the little girl to be permanently awarded to the father, subject to the conditions and restrictions following, and it is to so much of the judgment as relates to this that the father has excepted: "When said child shall attain the age of seven years her custody shall be permanently in the father, J. H. Evans Jr. But in the meantime the possession of said minor child, Willie Evans, is awarded jointly to both plaintiff, Mrs. M. J. Lane, and J. H. Evans Jr., to be divided as follows: The father is to have the custody of said child until one week from this day, then it is to be delivered to the said grandmother to have the child one month. At the expiration of the month the custody of said child shall be redelivered to the father for one month, and then redelivered to Mrs. M. J. Lane, the grandmother, for a like length of time. Said custody to alternate between the two parties for each succeeding month in the manner aforesaid until the child attains the age of seven years." It is further provided that the father shall send for the child when his time to have it shall come, and its grandmother, Mrs. Lane, shall deliver the child to him, and the grandmother in like manner shall send for the child when her time comes to have possession of it, and it shall be delivered to her by the father. The plaintiff in error excepts upon the ground that the provision relating to the possession of the minor child is against the interest of the minor child, that to place it in this divided custody of different parties will render it impossible for the father to properly control or protect it, and because such division of time is contrary to law, because it is an abuse of the court's discretion, in that, the father being entitled to the custody of the child, there is no law to compel him to surrender such possession or control at any period of the child's minority.

We find no error in the judgment. The case is one of a kind which is not infrequent where a young man, who at the death of his wife is left with the care of a helpless babe, marries again. According to the evidence in the case, the mother of the young father was not so situated as that she could care for the baby. It was sent to Mrs. McCall's, where it stayed for two or three days. The little one was frail to begin with, and was at that time quite ill with an infantile disorder. The old grandmother, as was natural, had begged her son-in-law at the funeral to give her this eight-days old baby, the only child of the daughter she was burying. The young man, no

doubt, possessed the fatherly instinct in a strong degree, and he did not at that time consent to give up his child. He perhaps did not then see clearly how utterly impossible it would be for any man to nurse and administer, as only tender woman can, to the wants of a new-born baby, even if it be well. Doubtless this baby would have died but for the tender care bestowed upon it by its grandmother and its aunts. The father only told the grandmother at the funeral that if he could not keep it himself he would rather for her to have it than any one else. Two days later he begged her to send for the baby. In view of the evidence in this record, evidencing the deep affection of the grandmother for this grandchild, whose birth perhaps cost its mother, her daughter, her life, the manifest sincerity which accompanies her statement that she loves it as she does her own life, and the fact that she gave up the remuneration she was receiving from taking boarders wholly for the purpose of giving her entire time to the care of this little granddaughter who had taken its mother's place in the old woman's heart, we would not reverse the judgment if the court had awarded the permanent custody of the child to the grandmother instead of to the father. The facts in this case are quite unlike those in *Sloan v. Jones,* 130 *Ga.* 836 (62 S. E. 21), in one most important respect; in that case there was no pretence that the father had ever said anything to indicate a surrender either of possession or of parental control. The law recognizes the general right of a father to the custody of his minor child to be paramount and superior to that of any other person, and yet this rule is not without exceptions. The father is not always entitled as a matter of right to the custody of his child. We do not speak now of those cases in which there is evidence to the effect that the father is an improper person to rear his child; for it is manifest that this affords an exception to the general rule. In the present case it does not appear, from the evidence, that the father is either unable to maintain his child or that his character is such that he is an unfit person to rear and train his child in a manner compatible with the ultimate welfare of the child and subservient to the best interest of the community. It is doubtless true that the judge was influenced in his decision by this consideration when he awarded the custody of the child to the father. Exception is taken, however, to the fact that his judgment provides for a divided possession or custody of the child until it reaches the age of seven years, and the

point is made that the judgment is to that extent without precedent and contrary to law. It is argued that the judgment is pro tanto void, because the court was without jurisdiction to render a judgment of that kind. As we stated above, the father is not, as a matter of right, in all cases and under all circumstances entitled to the custody of his child. No doubt if the judge had been fully satisfied that the father in this case intended absolutely to relinquish parental control, he might have awarded it to the grandmother. Prior adjudications in this State, if the evidence had been clear, would have warranted his doing so. See *Bently* v. *Terry,* 59 *Ga.* 55 (27 Am. R. 399); *Townsend* v. *Warren,* 99 *Ga.* 105 (24 S. E. 960); *Smith* v. *Bragg,* 68 *Ga.* 650; *Gay* v. *Thompson,* 131 *Ga.* 694 (63 S. E. 133); *Eaves* v. *Fears,* 131 *Ga.* 820 (64 S. E. 269). If there had not been evidence that the father had materially contributed to the support of the child prior to the time that he married again, the court might have been authorized, under the circumstances, to render judgment in favor of the grandmother. Civil Code of 1895, § 2502. If, then, the judge could in this case have awarded the custody of the little girl either to its grandmother or to its father, why can he not award the custody of the little girl to these two near relatives jointly during the years of its tender infancy, when, according to every instinct of humanity, a judge can know as well as any other man that a little girl who has been nursed from death into life by a grandmother who idolizes her still needs the watchful care and the fond affection of the one who most nearly fills her dead mother's place? The single object to be kept in view in considering the custody of a child, and in determining to whom it shall be awarded, is the welfare of the little one. And by welfare we mean not alone its financial well-being, but also that peacefulness of mind and sweet content upon which its happiness depends. The judge in this case wisely knew that a child under seven years of age, surrounded with every accessory which could be procured to embellish a life of luxurious wealth, might be far less happy than she would be in receiving one tender stroke of the grandmother's hand, or one loving look from the grandmother's heart. Happiness is not in the multitude of things that man possesses. Of course, we do not lose sight of the point stressed by counsel for the plaintiff in error, that a child's being one month in the possession of the father and then a month in the possession of the grandmother would work a divi-

sion of responsibility, and yet we know as a matter of common knowledge that when a child is placed in moral surroundings and is subject to gentle influences, handled affectionately (as the evidence shows that this child would be at its grandmother's, and no doubt also at its father's house), very little control would be needed prior to the time fixed by the judge's order for the child to be placed finally in the custody of her father. The question of training is important, and the judge so considered it. No date can be arbitrarily fixed for the ending of infancy as it is popularly understood. One child might require more control than another, or more correction. The courts have uniformly recognized, impliedly at least, woman's superior capability and divine prerogative in the care of infants of tender years, and in such a case have not considered the question of correction at all. Considering that the child in this case is a frail and delicate girl, physically weak, and that there is no evidence that she is headstrong or hard to control, we do not think the judge abused his discretion in somewhat extending the period usually covered by the term "infancy" in its popular definition. It is true that "as the twig is bent the tree's inclined," but we do not think in this case that either the welfare of the child or the effect due to her influence upon the public hereafter will be deleteriously affected by the liberal use of the court's discretion. As we view the law applicable to this case, so much of the court's order as relates to the possession of the child intervening its arrival at the age of seven years, and placing a condition upon the judgment finally awarding the custody of the child to the father, is merely similar to provisions, frequently made, allowing a child to visit certain persons closely related to it, or those persons to visit the child. The provision in this case allowing the grandmother to have the child for one month alternately with each month that it spends at its father's house is nothing more than a provision allowing the child to visit its grandmother once a month, and to stay a month. This is clear from the direction that the grandmother shall send for the child when its time to visit her arrives, and shall deliver it to its father when he sends for it at the expiration of the month. There is nothing in the evidence to show that the grandmother's house is a place unfit for the little one to visit. We could not in this case interfere with the discretion of the court, as there is no evidence that it was abused. Large discretion is vested in the trial

judge in habeas corpus cases; and this court will not interfere with his judgment on the law and the facts, unless it be manifestly abused. The discretion vested in the judge who tries a habeas corpus case is so large that his judgment on the law and the facts will not be interfered with by a reviewing court if there be enough evidence to support it, though the judgment upon the facts be against the weight of the evidence. Unless the finding is so manifestly contrary to the evidence as to indicate passion or prejudice, it will not be disturbed.

We approve the spirit of catholic humanity in which the judge so exercised his discretion as to modify his order in the manner in which he did. We have not been cited to any controlling authority holding that such a modification, which amounts to nothing more than permission that the grandmother and the child may spend six months in the year in each other's company, is unwarranted or an abuse of that broad discretion with which the judge who hears a writ of habeas corpus is necessarily clothed. The case of Wofford v. Clarke, 82 Ark. 416, cited by the plaintiff in error, at best is only persuasive authority, and while it is similar in its facts, it is not in principle really contradictory to what we hold.

In every case where the custody of a minor child is concerned, the prime and paramount consideration is the welfare and happiness of the child. The judge who sees the witnesses and hears them testify has so much better opportunity than the appellate court for correctly determining this that it is scarcely possible in any case to say as a matter of law, upon review, that the child's interests have been injuriously affected by the judgment awarding custody.

It is stressed upon us that the grandmother may teach the little one to disrespect its father, and to hate its stepmother, and that the effect of the frequent removals of the child would be hurtful instead of helpful to it. We do not think that this conclusion necessarily results from the evidence as we read it. There is certainly nothing said by the grandmother in her testimony which will support such an inference, and, as we have already said, the trial judge is a far better judge of this matter than this court can be. Naturally the plaintiff in error does not complain that he is awarded the final custody of the child. The only point to which his complaint is addressed is that the grandmother, until the child is seven years old, is permitted to keep it as much as the father. We find no fault

with this. It is possible that this little one, as an innocent messenger traveling from the home of one of "these warring families" (as counsel denominates them) to the other, all unconsciously may be the means of pouring oil upon the troubled waters,—may be a balm of Gilead to heal the festering wounds, and thus effect a reconciliation which will be beneficial to the peace of the community. It may be that before the time shall elapse when the right of the father can prevent, if he wishes, all intercourse between this little girl and the grandmother who nursed her into life and whose tender care she still needs, death will have solved the question. It may be that ere that time nature's replenishing hand will fill the domestic circle of this father, newly wed, with so many objects of love and affection that the paternal longing will be satiated, and that he and his wife will not be so anxious as now to have the care of the little girl who is not the daughter of them both. However this may be, we hold that in awarding the custody of an infant child, the court may provide that the opposite party shall have the right to visit the child, or that the child shall have the right to visit a party to whom the court has refused to award its custody and consequent parental control. Likewise, in rendering judgment upon a writ of habeas corpus and awarding the ultimate custody and control of a child of tender years to its father, the court may adjudge that it shall spend every alternate month with its maternal grandmother, and the father may be required to deliver it to the grandmother for that purpose. *Judgment affirmed.*

POWELL, J. I agree in the main with what is said in the able and well-expressed opinion of my brother Russell. I think, however, that it would probably have been better to have awarded the child to the grandmother (with privilege of the father to visit it) until it arrived at the age of seven years, and after that to the father (with provision as to its thereafter visiting the grandmother), but this was a matter resting in the discretion of the trial judge.