## 3021.  MANNING *v.* CRAWFORD *et al.*

1. Parental control is lost by a voluntary contract releasing the parental rights to a third person.

2. Where a dying mother requested her mother to take her child and raise it, the request being made in.the presence of the father of the child, who thereafter acquiesced in his wife's request by delivering the child to its maternal grandparents, *held,* that this surrender of the custody of the child by the father with full knowledge òf the facts warranted the inference that he had surrendered all his parental rights; and upon the hearing of a habeas corpus proceeding brought by him to obtain possession of the child, it was not error to award the possession to its grandmother. If a mother gives her infant child to another, who takes and cares for it, and the father acquiesces in this disposition of the child, he is bound by it.

3. The contract by which it is sought to establish that a parent has relinquished his parental rights must be clear, definite, and certain; but, though these essentials are required in order to create and constitute the contract of relinquishment, it is not required that the evidence as to the contract shall be undisputed. If the evidence by which it is sought to establish a contract to relinquish parental control is itself vague and indefinite, or shows that the minds of the contracting parties failed to meet,—that there was a variance between the offer and the answer thereto,—then a failure to prove the contract results. But a mere denial on the part of the defendant that the contract was made, or an assertion that the terms of the contract differed from those asserted by the plaintiff (even though supported by proof), raises merely an issue of fact as to whether the contract or gift sought to be asserted—if it be clear, definite, and certain in its terms—was or was not made.

4. Where a child is given to its grandmother by its father, she is entitled to the possession of the child even though she be a married woman, if her husband does not object; and she is not bound by a compromise to which she was not a party, made in the course of a former habeas corpus proceeding brought by the father of the child against her husband.

5. In awarding the custody of a minor child, the court, in its discretion, may provide that the child can visit its father or other near relatives.

6. There was evidence authorizing the finding that the father of the minor child, in accordance with the wishes of his dying wife, and perhaps influenced thereby, but voluntarily, surrendered his parental control of the child to its maternal grandmother, and that the terms of the gift under which the child was delivered to its grandmother, and upon which it was accepted by her, though first suggested by the mother of the child, were tacitly agreed to by the father, and were clear, definite, and. certain. Though there was evidence to the effect that the child was only temporarily placed in the custody of its grandmother, for care and. safe-keeping in its tender infancy and until its father should call for it, it can not be said that the judge abused that large discretion with which he is invested in the hearing of. a writ of habeas corpus.

DECIDED FEBRUARY 15, 1911.

Habeas corpus; from city court of Wrightsville—Judge Jordan. October 12, 1910.

*J. S. Adams, Daley & Daley,* for plaintiff.

*E. L. Stephens, Hines & Jordan,* for defendants.

RUSSELL, J. Manning brought a writ of habeas corpus against Mr. and Mrs. J. W. A. Crawford, to recover possession of his infant daughter. Upon the hearing of the writ the trial court awarded the custody of the child to the respondents, who are her maternal grandfather and grandmother. It appears from the record that the mother of the child was for several months hovering between life and death. She tried several times to see her mother, but circumstances prevented it. Finally she was brought to a hospital in the city of Atlanta, and, in response to a letter from her brother, her mother answered her urgent summons. She was then upon her death-bed, and was fully conscious of her condition, referring to it several times during her interview with her mother. Her husband was present when she begged her mother, in language which is touching in its pathos, to take her little girl and only child and raise the child as her own. The appeal in which she urged her mother to let the little girl be a substitute for herself, whom death would so soon remove, was piteous in its circumstances, and we can well imagine that the husband, bending over her bedside and knowing as he did that dissolution was upon her, and unwilling, if he possessed any human instinct whatever, to add a single pang to those she was already enduring, would not, under the circumstances, at that time have expressed his dissent or disapprobation of her wish's fulfillment. It would have been indeed a brutal husband who, under such touching circumstances and in such an awful hour, could have asserted his legal authority despite the dying wishes of his wife. For that reason we attach but little importance to the circumstance that he was silent upon the subject, as an evidence that he at that time acquiesced and tacitly agreed to give his only child to his mother-in-law. On the contrary, we are rather inclined to believe, from his silence, that at that time he intended, if it was possible to do so, to keep the child himself; for otherwise the stress of grief and pity, and the wish to comply with the last request of his wife and to let her know that he complied would have been so overpowering as to have been almost irresistable. Nor is this all.

The record does not show that Mrs. Crawford at that time defi-

nitely accepted the gift, even if it can be implied from Dr. Manning's silence that he intended to give her his child. The absence of any statement by Mrs. Crawford as to the terms upon which she would take the child, or as to whether she would take it at all, is suggestive that perhaps she was so overcome with grief over the approaching loss of her daughter that she was unable to express herself. However this may be, several days after Mrs. Manning's death, according to the testimony of the respondents, Dr. Manning brought his little girl to Mrs. Crawford's and left her there; and there for nearly seven years she has lived, treated in every respect as a child of the respondents. According to Mrs. Crawford's testimony she recalled to Dr. Manning the dying request of his wife, and distinctly told him that while she was anxious to comply with her daughter's request and take the child, she would not do so unless it was thoroughly understood and agreed that she was to take the child for good and all as her own. According to her testimony, she told the petitioner that if he intended simply to leave the child, and then, when she had become attached to it, to come and carry the child away, she would not take it at all, and thereupon Dr. Manning, after considering the matter and after she had repeated the same statement, left the child with the tacit agreement that she was to have the child as her own. She further testified that during all the years that the child had lived with her, Dr. Manning had contributed nothing towards its support and maintenance, that he had not nursed it in sickness, though he had sometimes visited the child at her house, and on one or two occasions she had sent the child to see him. The evidence in behalf of the respondents made a clear case of the implied acceptance of a distinct and unambiguous proposition to take the child upon the condition, well understood, that the gift was to be irrevocable.

Testimony for the petitioner was to the effect that the child was only temporarily left in the custody of its grandmother, in deference to the wishes of its dying mother, but that Manning did not assent to any irrevocable gift of his child, that on the contrary it was thoroughly understood that he would not surrender his parental rights to any one. Manning admitted that he told Mrs. Crawford that his father and mother could not keep the child, but said that he told her he wanted her to keep it until he was able to care for it himself. He was at that time a young physician, just beginning

the practice of medicine and considerably in debt, and, according to his testimony, he accepted the kindness of the child's grand-parents in its behalf simply because they appeared anxious for the child, and were able at that time to care for it better than he could; and as soon as he married again he was anxious to have his child, and requested its return in accordance with the agreement. The evidence showed that while the grandmother was perhaps better able financially to maintain and rear the child, the petitioner was also able to care for it. There was some evidence as to the habits of the petitioner for inebriety, but we do not apprehend that this fact was controlling in its influence upon the court's decision, for the evidence did not show that Dr. Manning, in the use of intoxi-cants, incapacitated himself for the performance of his professional duties generally, nor that he had forfeited his right to the respect and esteem of his neighbors. As we see it, the case presented only an issue upon the facts which was properly to be determined by the exercise of the discretion of the trial judge in accordance with law. Of course, prima facie, the right of the father to the possession and control of his minor child is paramount to any other. As remarked by Judge Lamar in *Williams* v. *Crosby,* 118 *Ga.* 298 (45 S. E. 282) : "Ordinarily the child should be committed to the person hav ing the legal right to its control, and on the production of a decree, properly exemplified, awarding the infant to the mother, she would be entitled to a judgment in her favor, unless it was shown by the father, relatives, or friends who had instituted the habeas corpus .proceeding, that since the rendition of the decree she had become an unfit person to longer retain the control of the infant, or, by her conduct and neglect of the physical, mental, or moral interest of the child, had forfeited her rights. In a contest between two parties, both of whom are fit and proper persons, the one having the legal right should prevail." But there are circumstances, as pointed out by Judge Lamar, under which the court, as parent of all the children,—parens patriæ,—must disregard the general para-mount right of a father to the possession of his child; because su-perior even to this general right is the welfare of the child itself. Says Judge Lamar in the *Williams* case, supra: "In every case, re-gardless of the parties, the welfare of the child is the controlling and important fact. This is not intended to nullify the laws of na-ture; for in most instances it will be found that the legal right of

the parent and the interest of the child are the same. But if through misconduct or other circumstances it appears that the case is exceptional, and that the welfare of the child requires that it should be separated even from its parent, the parens patriæ must protect the helpless and the innocent. They are the wards of the court, the hope of the State, and the seed corn of the future."

The first question then to be decided, upon review, is whether the father in the present case surrendered and renounced his parental control of the child in question. The Civil Code (1910), § 3021, declares that any father may do this; and the first question in this case is, did this father do so? Parental control is lost by a voluntary contract releasing the parental rights to a third person. In this case the evidence does not show that the petitioner in so many words gave his child to his mother-in-law. He said nothing, according to the testimony of the respondents. But, as we see it, the circumstances under which he carried his child to the Crawford home and left it there were such as reasonably to preclude every other inference than that it was his intention to give the child to Mrs. Crawford, and thereby absolutely surrender all parental control. His conduct after he carried the child there evinced this, because he visited the child only at rare intervals. Where the dying mother requested her mother to take her child and raise it, the request being made in the presence of the father of the child, who thereafter acquiesced in his wife's request by delivering the child to its maternal grandmother, this surrender of the custody of the child by the father, with full knowledge of the facts, warrants the inference that he surrendered all his parental rights; and it was not error, upon the hearing of the writ of habeas corpus, to award the possession of the child to its grandmother. If a mother gives her infant child to another, who takes and cares for it, and the father acquiesces in this disposition of the child, he is bound by it.

It is strongly insisted that the right of the defendants to the child is not clearly proved, and that the law requires that such a contract must be clear, definite, and certain. The contract by which it is sought to establish that a parent has relinquished his parental rights must be clear, definite, and certain; but though these essentials are required in order to create and constitute the contract of relinquishment, it is not required that the evidence as to the contract shall be undisputed. If the evidence by which it is sought to

establish a contract to relinquish parental control is itself vague and indefinite, or shows that the minds of the contracting parties failed to meet,—that there was a variance between the offer and the answer thereto,—then a failure to prove the contract results. But a mere denial on the part of the defendant that the contract was made, or an assertion that the terms of the contract differed from those asserted by the plaintiff (even though supported by proof), raises merely an issue of fact as to whether the contract or gift sought to be asserted—if it be clear, definite, and certain in its terms—was or was not made. We think that the proof was ample to authorize the judge to prefer the testimony of the defendants to that in behalf of the plaintiff. The question really to be determined was whether the contract was clear, definite, and certain. And the evidence upon that point is sufficient to authorize the finding of the judge, even though the plaintiff contradicted it or asserted that there had been no contract. The circumstances of the case tend to establish the fact (and it was a question of fact for the judge as to whether or not they really did establish it) that Manning gave Mrs. Crawford his child; and the conflict in the evidence does not prevent the contract from being clear, definite, and certain. No matter how much doubt may be thrown upon the question whether the contract was or was not made, the law says that if one was made, it must be so clear as to be understood, so definite as to be capable of enforcement, and so certain as not to leave the right to custody of the child in doubt.

It is insisted that this suit can not be maintained, because, when a prior writ of habeas corpus was brought in favor of Manning and against J. W. A. Crawford, it was compromised. We do not know the circumstances under which the compromise was effected, or its exact nature, but, according to the evidence, Mrs. Crawford was no party to this compromise. She is not bound by it, according to the testimony. There is no testimony in conflict with that view. Where a child is given to its grandmother by its father, she is entitled to the possession of the child even though she be a married woman, if her husband does not object; and she is not bound by a compromise made in the course of a former habeas corpus proceeding brought by the father of the child against her husband.

Exception is taken upon the ground that the judgment provides that the child shall have the right to visit her father. As we held

in *Evans* v. *Lane,* ante, 826 (70 S. E. 603), it is in the discretion of the judge, in awarding the custody of a minor child, to make any provision he sees proper, not violative of the law. For the purpose of allowing more latitude or scope for development of infant children, it is not improper, in awarding the custody of a child to one of the contesting parties, to provide also that the child may visit either its father or other near relatives who are warmly attached to it, and who will in a degree supervise its conduct.

Under the evidence, it can not be said that the judge who tried the case abused his discretion in awarding the custody of the child to the grandmother. There was evidence authorizing the finding that the father, in accordance with the wishes of his dying wife, and perhaps influenced thereby, but voluntarily, surrendered his parental control of the child to its maternal grandmother, and that the terms of the gift under which the child was delivered to its grandmother, and upon which it was accepted by her, though first suggested by the mother of the child, were tacitly agreed to by the father, and were clear, definite, and certain. Though there was evidence to the effect that the child was only temporarily placed in the custody of its grandmother for care and safe-keeping in its tender infancy, and until its father should call for it, it can not be said that the judge abused that large discretion with which he is invested in the hearing of a writ of habeas corpus.

*Judgment affirmed.*