### 4419. CRAWFORD v. MANNING.

1. The bill of exceptions having been sued out more than sixty days after the rulings made at the trial which are complained of therein, and no exceptions pendente lite having been preserved, the assignments of error as to these rulings will not be considered.
2. In a judgment rendered in a habeas-corpus case, awarding the custody of a child to its grandparents, a provision requiring the child to visit its father during stated intervals specified in the order, is valid.
3. The several courts of this State have power to attach and punish for contempt any party who disobeys or resists any of their lawful orders. It follows that where a judgment in a habeas-corpus case awards the custody of a minor child to its grandparents and requires them to surrender the child to its father at stated intervals upon his application therefor, and the grandparents refuse to comply with this provision in the order, they may be attached and punished for contempt.
4. The evidence was conflicting, but authorized the judgment complained of.

DECIDED DECEMBER 21, 1912.

Contempt; from Johnson superior court—Judge Hawkins. June 20, 1912.

*E. L. Stephens,* for plaintiff in error. *J. S. Adams,* contra.

POTTLE, J.  Manning brought habeas corpus to obtain possession of his minor daughter, who was being detained by her maternal grandparents under an alleged parol gift from the father.  The hearing was had before Hon. E. W. Jordan, judge of the city court of Sandersville, presiding in the city court of Wrightsville, and an order was passed awarding the custody of the child to the defendants, but providing that she should be required to visit her father at stated intervals upon application by him, and the defendants were directed to deliver the child to her father upon such application, "without some good and sufficient reason and excuse."  This order and judgment were affirmed by the Court of Appeals.  *Manning* v. *Crawford*, 8 *Ga. App.* 835 (70 S. E. 959).  Subsequently Manning filed a petition addressed to Hon. J. L. Kent, judge of the city court of Wrightsville, and to the city court of Wrightsville, alleging that he had demanded his child from the defendants for the purpose of having her visit him in accordance with the terms of the order previously passed, and that the defendants had failed and refused to surrender the child to him.  He prayed that a rule nisi be issued, requiring the defendants to show cause why they should not be adjudged in contempt.  Upon this petition an order was issued by Judge Kent, reciting that he was disqualified to hear the petition, by reason of relationship to the parties, and directing that the defendants show cause before Hon. E. W. Jordan, judge of the city court of Sandersville, in the city court of Wrightsville, why they should not be adjudged in contempt as prayed. While the case was pending, the city court of Wrightsville was abolished by the General Assembly, and all of the cases therein pending were transferred to the superior court of Johnson county. Thereafter the contempt proceeding came on to be heard before Judge Hawkins in the superior court.  At the hearing the defendants demurred, filed a plea in abatement, and answered.  The demurrer was overruled, the plea in abatement was stricken on motion, and, after hearing evidence, the judge passed an order adjudging that the defendants were guilty of contempt, but provided that they might be relieved from any penalty upon their strict compliance with the order which had been passed in the habeas-corpus case; and the defendants were ordered to deliver the minor child to her father upon his application therefor, to be kept by him until the expiration of the time specified in the original order; and

the father was directed to deliver back the child to the defendants in accordance with the true intent and meaning of the original order passed by Judge Jordan. The defendants excepted to the passage of this order, and to the judgment overruling the demurrer, to the order striking the plea in abatement, and to the refusal to admit certain evidence offered by the defendants during the trial.

1. The contempt proceeding was tried on April 13, 1912, but the decision was reserved and the final order passed on June 20, 1912, and the bill of exceptions was certified on July 5, 1912. It is apparent, therefore, that the assignments of error which complain of the overruling of the demurrer, the striking of the plea in abatement, and the refusal to admit certain evidence offered at the trial, come too late, the bill of exceptions having been certified more than sixty days after the rulings complained of.

2. Error is assigned upon the order passed by Judge Hawkins, on the ground, among others, that the provision in the original order passed by Judge Jordan, that the minor child be allowed to visit her father at certain times specified in the order, was void. The same contention was made in the habeas-corpus case and expressly decided adversely to the defendants by the Court of Appeals. See *Manning* v. *Crawford,* supra, where it was held that "in awarding the custody of the minor child, the court, in its discretion, may provide that the child may visit its father, or other near relative." See, also, *Evans* v. *Lane, 8 Ga. App.* 826 (70 S. E. 603), where the same ruling was made.

3. The order passed by Judge Jordan being valid, it remains only to inquire whether the judge of the superior court had the power to adjudge the defendants guilty of contempt for violating its provisions. In reality the order passed by Judge Hawkins was nothing more than a restatement of the judgment which had been previously granted by Judge Jordan. It was adjudged that the defendants had violated this order, but no penalty was imposed upon them other than a requirement that in the future they should abide by the terms of that order. Courts of record have the inherent power to compel, by attachment for contempt, obedience to all lawful orders and decrees. See In re *Fite,* 11 *Ga. App.* 665 (76 S. E. 397). In addition to this, the statute expressly provides that the several courts of this State may inflict a summary punishment for contempt upon any party to a case who disobeys or

resists "any lawful writ, process, order, rule, decree, or command of the said courts." Civil Code (1910), § 4643; *Tindall* v. *Nisbet*, 113 *Ga.* 1114 (39 S. E. 450, 55 L. R. A. 225). While our attention has not been directed to any decision of the Supreme Court of this State, expressly holding that a party who violates such an order as the one involved in the present proceeding is guilty of contempt and may be punished therefor, there can be no doubt that the case is squarely within the statute. Nor is there room for question that without the statute the court would have the inherent power to thus compel obedience to its orders. The only precedent in this State to which we have been referred is that of the *State* v. *Philpot, Dudley,* 46, where Philpot was attached for contempt until he produced the body of a minor child referred to in the order, or showed that it was impossible to do so.

4. The only question, therefore, for consideration by Judge Hawkins was whether or not the defendants had violated the terms of the order passed by Judge Jordan and had refused to surrender to the plaintiff the possession of his minor daughter upon demand, as required by that order. Upon this question the evidence was directly in conflict. The plaintiff testified that he had repeatedly applied to the defendants for the delivery of his child, in order that she might visit him for the period of time specified in the original order, and that they had refused to permit her to visit him. They sought, in defense, to show that the father was addicted to the excessive use of alcoholic stimulants; that he was not a fit and proper person to have the custody of his child, and that he was not financially able to care for her during the short space of time in which, under the court's order, he was permitted to have her with him. It is contended that all these things constituted a "good and sufficient reason and excuse," within the meaning of the order passed by Judge Jordan. We do not undertake to say exactly what the presiding judge did mean by the use of this language, or to determine just what would be a sufficient excuse for not permitting this child to visit her father for the short time of two weeks four times each year, but we do hold without the slightest hesitation that the showing made by the defendants as a reason for not complying with the court's order was utterly insufficient. The court determined that it was for the best interest of the child that her grandparents should rear and maintain her; but it also de-

termined that the interest of this child, and the affection which her father was supposed to have for her, demanded that she should be permitted to visit her father at stated intervals during the year. This order was valid and conclusively binding upon all the parties thereto. However zealous these grandparents may have been for the welfare of this child, they had no right to set this order at naught and deny the father of the child the right to have her with him during the time prescribed in the court's order. The fact that they did not approve of their son-in-law, or that he had recently gone through bankruptcy and was practically without means, constituted no reason why he should be denied the right to see his child and be with her during the short interval of time prescribed in the court's order. The grandparents contended that they were apprehensive that the father would remove the child beyond the jurisdiction of the court, and refuse to surrender her back at the expiration of the two weeks. According to the testimony of the father, this was a wholly baseless suspicion (originating doubtless in their love and zeal for the welfare of the child), and the judge of the superior court had a right to find that their suspicion had no foundation in fact. He passed an order directing that the father should return the child at the expiration of the time fixed in Judge Jordan's order. The father is not complaining of the passage of this order, and if he disobeys it, he too will be guilty of contempt. The welfare of the child and the rights of the parties were fully protected by the order of Judge Hawkins, and this court sees no reason to interfere.        *Judgment affirmed.*