## BOOTH et al. v. PITTS.

Under the conflicting evidence in this case, the court did not err, in passing upon the issues involved in the habeas-corpus proceeding, in awarding the child, whose control and custody was sought in the petition, to the petitioner, the child's father.

No. 3272. DECEMBER 15, 1922.

Habeas corpus. Before Judge Baum. City court of Quitman. April 22, 1922.

S. T. Harrell, for plaintiffs in error. J. E. Morris, contra.

BECK, P. J. B. T. Pitts instituted a habeas-corpus proceeding against Mrs. Sallie Booth and Miss Kittie Slappey, to recover the custody and control of Pauline Pitts, a minor child some 13 years of age, who was the daughter of petitioner. The defendants filed their answer setting up that the child was given to them when she was 13 months old, by her mother, and by the plaintiff, who is the father. The defendants further alleged that the father had not contributed anything towards the support of the child for twelve years; that they had reared the child and sent her to school; and that the father had never made any claim or request for the child until she was 13 years old. At the conclusion of the hearing the judge awarded the custody of the child to the petitioner; and provided in the judgment that she should be allowed to visit the defendants for one month each year. The defendants excepted to the judgment, on the ground that it was contrary to the evidence.

The Civil Code, § 3021, declares that "Until majority, the child remains under the control of the father, who is entitled to his services and the proceeds of his labor. This parental power is lost — 1. By voluntary contract, releasing the right to a third person. 2. By consenting to the adoption of the child by a third person. 3. By the failure of the father to provide necessaries for his child, or his abandonment of his family. 4. By his consent to the child receiving the proceeds of his own labor, which consent shall be revocable at any time. 5. By consent to the marriage of the child, who thus assumes inconsistent responsibilities. 6. By cruel treatment of the child." In the instant case it is insisted by the plaintiffs in error that the parental power and control of the child had been lost by voluntary contract releasing the right to them, and by the failure of the father to provide necessaries for

the child. Whether these two stated contentions of the plaintiffs in error were true or not depended upon the evidence in the case; and the evidence relating to these questions was conflicting. The father himself testified upon this question, in substance, that he had not lost his parental power and right to the control and custody of the child by voluntary contract. The two defendants testified that he had given the child to them when she was 13 months old. The plaintiff, in his testimony given at the trial, contradicted the allegations of the defendants in regard to his failure to furnish the necessaries of life to the child, and his abandonment. He testified that up to a recent date he was sending her $10 or $15 a month and furnishing other articles of necessities, and also " furnishing money for Mrs. Booth [one of the defendants] to come and bring Pauline each year [that is, to his home in Florida], at which time they would spend several days or weeks with me in my home." He further testified that " in 1917, during the visit of Mrs. Booth and Pauline at my house, I desired to carry Pauline to Macon, Georgia, to see my father; and Mrs. Booth objected. She requested of me that I at that time give Pauline to her, and went so far as to insist that I give her a paper to that effect. I told her that I would not do that under any circumstances. She left my house in an irritated state of mind, and returned within a few days to Dixie [Georgia]. I wrote to her as I had done before, but Mrs. Booth would not reply. I wrote to Pauline, and got no reply; and I continued to write to Mrs. Booth or to Pauline at least once per·month ever since, but to none of these letters have I received a reply." The plaintiff had remarried, and his wife testified as to her desire to have her husband's daughter come and make her home with them. Plaintiff admitted that since 1917 he had not contributed to the child's support, nor had he seen her until some weeks before the trial. The defendants gave testimony supporting their allegations as to the voluntary surrender by the father of his parental right, and his failure to furnish the necessaries of life for the child. They testified that the mother, who died some twelve years before the trial, had given the child to them, and that the father had joined in the gift.

The child herself, sworn as a witness for the defendants, testified that she was nearly 13 years old and had lived with the defendants nearly all her life; that they had been and still are good

to her; and that she is well clothed and well fed, and is in the seventh grade at school; that her father had not contributed anything for her support, so far as she knew; that she preferred to continue to live with the defendants, for the reason that she had been with them since she was a baby, and that she owed her life to them, and was willing to go to her father after the death of the defendants; that both of them are old and feeble and need her help. Other witnesses introduced by the defendants, while testifying as to their good character, expressed grave doubts as to their ability to rear and support the child properly.

The plaintiff produced a long array of witnesses who testified as to his good character and his ability to take care of the child and give her a good home; and these witnesses also testified to a state of facts which authorized the judge to infer that it was for the best interest of the child that she should be in the home and the control and custody of her father. Even though the weight of the evidence in the record seems to be in favor of the defendants, that the child had been given to them by its parents (that is, by her mother just before her death and by her father soon afterwards), this court can not reverse the judgment of the lower court upon comparison of evidence. It can only sustain the judgment of the court below when that judgment is supported by some evidence, where the only attack upon the judgment is that it is contrary to the evidence. There is nothing novel in the questions presented in this record. They have been elaborately discussed in several decisions of this court and of the Georgia Court of Appeals; among them the following: *Richards* v. *McHan,* 129 *Ga.* 275 (58 S. E. 839); *Looney* v. *Martin,* 123 *Ga.* 209 (51 S. E. 304); *Miller* v. *Wallace,* 76 *Ga.* 479 (2 Am. St. R. 48); *Wigley* v. *Mobley,* 101 *Ga.* 124 (28 S. E. 640); *Sloan* v. *Jones,* 130 *Ga.* 836 (62 S. E. 21); *Lamar* v. *Harris,* 117 *Ga.* 993 (44 S. E. 866); *Manning* v. *Crawford,* 8 *Ga. App.* 835 (70 S. E. 959); *Evans* v. *Lane,* 8 *Ga. App.* 826 (70 S. E. 603).

*Judgment affirmed. All the Justices concur.*