ANCHORS *v.* GUEST.

No. 6883. September 17, 1929.

*Thomas M. Stubbs,* for plaintiff in error.

*Augustine Sams* and *C. H. Feagan,* contra.

Russell, C. J. Mrs. P. L. Guest filed a petition seeking to restrain and enjoin Clanton Anchors from taking possession of the person of Ellen Vera Anchors, a little girl three years old, or from removing the child from the home, custody, and possession of the petitioner, Mrs. Guest. The defendant answered, and at the inter-locutory hearing pursuant to the order of the judge of the superior court it was agreed by counsel for both parties that the decision of the court in the interlocutory hearing should be a final decision as to the permanent injunction sought. On the trial it appeared that the defendant, Clanton Anchors, married Myrtle Guest, the daughter of petitioner, in 1924. The defendant and his wife lived in the home of Mrs. Guest continuously after their marriage. Ellen Vera Anchors, the daughter of the defendant and his wife Myrtle, was born November 5, 1925. Mrs. Myrtle Anchors died while in childbirth on September 18, 1927. After her death the defendant and his little daughter continued to reside in the home of the petitioner, Mrs. Guest, the child's grandmother, and so resided at the time of the filing of the petition in this case. During this time Mrs. Guest fed and dressed the child and otherwise cared for her, though the father bought some of her clothes and furnished medical attention when necessary. To support her claim of right to the custody and control of the child, the petitioner asserted that about four hours before the mother of the child died while attempting to give birth to another baby, she gave her daughter, Ellen Vera Anchors, then nearly two years of age, to petitioner, and requested that she take the little girl into her custody and control and care for her as long as she (the grand-

mother) lived, in which gift and request the father of the child is alleged to have acquiesced by agreement thereto in the presence of his wife. There was evidence introduced to show the financial ability of the petitioner to properly care for the child, as well as a like ability on the part of the father. No attack was made upon the moral fitness of either party to properly rear the little girl. The controlling question in the case was whether a valid gift of the little girl was made by her dying mother and so agreed to by the father of the child as to constitute a relinquishment of his parental rights.

Though the father denied the alleged gift, the trial judge had before him for his consideration the following testimony concerning the agreement from witnesses in behalf of the plaintiff: Dr. Linton Smith, the physician attending Mrs. Anchors at the time of her death, testified: "I was sitting on the bed, or by the bed, talking to Mrs. Anchors and Mrs. Guest, her mother. Mrs. Anchors said to her mother, 'Mother, I am not going away from here with you; I am not going home with you.' Mrs. Guest reassured her, and told her that she thought she was. She said, 'No, I am not, and I want to give you my babies.' She had only one baby at that time, but was attempting to give birth to another. She said, 'Will you promise to take care of my babies?' Mrs. Guest said, 'If anything happens, I will.' Mr. Anchors was sitting on the porch at the hospital. Whether he heard Mrs. Anchors I don't know, but he turned and came in from the porch. She turned and said to him, 'I have given my babies to Mama, and she has promised to take care of them as long as she lives. Will it be all right with you?' He says, 'Yes.' She says, 'Did you hear that, Mama?' He agreed to it." The petitioner testified that Mrs. Anchors "stated to me, just four hours before she passed away, 'Mother, I am not going back with you this time. I want you to promise me that you will take my babies and take care of them as long as you live; that you will never let anybody else have them;'" that Mr. Anchors was sitting on the porch, and he came in the room, stooped down and kissed her; and she said, "Sugar, I have given Mama my babies, and I want you to promise that you will never take them away from her, but will stay there and help take care of them as long as she lives;" and that Mr. Anchors said, "I certainly will." Those were the words he used. It appeared that Mrs. Guest had

desired to adopt the little girl, but the father would not agree; and the husband of the petitioner testified that in the discussion of the matter the defendant admitted that he had given the child into the custody of the petitioner. At the conclusion of the hearing the trial judge granted an order permanently enjoining the defendant "from taking possession of the child or from removing her from the home and the custody and possession of Mrs. P. L. Guest, or from molesting or interfering with said child or the custody of said child by Mrs. P. L. Guest in any way whatsoever." The defendant was granted the right to see his daughter "at any reasonable time and for any reasonable period of time." The defendant (plaintiff in error) assigns this judgment as error, because contrary to law.

This case does not differ from a large number which are controlled by the rule that where there is a conflict in the evidence adduced upon an application for an interlocutory injunction, and the judge either grants or refuses the application, his discretion in that regard will not be controlled if there is evidence sufficient to support his judgment. We do not lose sight of the rule that primarily the right to the custody of his child is in the father; and in this case a review of the evidence shows that the respondent father is a young man of fine character and a well-established reputation, qualified mentally and morally and well able financially to properly support and educate his little girl. He denied making the agreement giving the custody of his little daughter to her grandmother during her life, but the petitioner and the physician who was present both swear to the contrary. Neither has more interest than the father in the result of the case. There are other circumstances which tend to corroborate the testimony in behalf of the petitioner. So it can not be said that the judgment of the trial judge was not authorized. According to the terms of the gift made by the mother and said to have been agreed to by the father, the case before us may or may not be one of permanent custody of the little girl during her minority, dependent upon the life of the wife's mother. The gift by the wife, acquiesced in by the husband, was to the grandmother "as long as she lives." Should the grandmother die at any time during the infancy of the child, the contract will have been fulfilled, and the father would be entitled immediately to retake possession of his minor daughter. In this

respect the case differs from *Manning* v. *Crawford,* 8 *Ga. App.* 835 (70 S. E. 959). This circumstance may have had weight in shaping the conclusion reached by the learned trial judge who presided in this case. Had the testimony disclosed an unlimited surrender of his custody, the possession of the child at the death of Mrs. Guest would not have been restored to Mr. Anchors; for the unqualified gift of the child would have made her in fact the child of Mrs. Guest, and therefore her status as related to her father would not be altered by the death of Mrs. Guest during her minority. But the gift was to the grandmother "as long as she lived" only. It was perhaps in apprehension of the specific nature of the gift in this case that Mrs. Guest was anxious to get the consent of Anchors to her adopting the little girl, and it is significant that the father refused. The gift as made was for the life of a named person. The adoption, just as an unqualified gift would have done, would have effected a total and absolute relinquishment of the father's parental rights.

*Judgment affirmed. All the Justices concur.*

ATKINSON and GILBERT, JJ., concur specially, on the basis of *Richards* v. *McHan,* 129 *Ga.* 275 (58 S. E. 839).