37345. SAILORS *et al. v.* SPAINHOUR.

Decided October 28, 1958.

479

P. T. McCutchen, Herbert Edmondson, for plaintiffs in error.
Herman J. Spence, R. Wilson Smith, Jr., contra.

QUILLIAN, Judge. ■ The intervenor insists that the trial judge erred in directing a verdict against her plea to the jurisdiction. Code § 79-404 provides: "The domicile of every minor shall be that of his father, if alive, unless such father shall have voluntarily relinquished his parental authority to some other person. In such event the domicile of the minor shall be that of the person to whom parental authority has been relinquished, or, his master, if an apprentice, or his employer; if neither master nor employer, then the place of his own choice; if the father shall be dead, then the domicile of the minor shall be that of his guardian, if he has one in this State; if no guardian, then of his mother, if alive; if no mother, then of his employer; if no employer, then of his own choice. The domicile of an illegitimate child shall be that of his mother."

It is undisputed that at the time of his death, Tom Hamm's domicile was in Hall County. Therefore, upon his death his infant child's domicile was also Hall County, unless he had previously voluntarily relinquished his parental control to some one in another county.

The intervenor contends that the child's domicile is in Gilmer County and, under authority of Code § 49-105, the Ordinary of Gilmer County rather than Hall County has jurisdiction of the issue. She bases this contention upon the theory that Tom Hamm had relinquished his parental control to her and her

husband and had thereby changed the child's domicile to Gilmer County. The intervenor's testimony relative to this point was in part that: "After Tom left the Spainhours and moved to the hotel he told me to keep the child and care for it and if anything ever happened to him he wanted me to see that she stayed with me. I told him that that must be in 'black and white' and he said that he would have it fixed that way and when he came back to my house he said that he had fixed a will and she was to be cared for and I was to keep her. Tom said if anything ever happened to him he wanted me to see after the child, he said that on several occasions. That was contingent upon something happening to him, he was on a flying status with the army."

While it is true that parental control may be lost by voluntary contract (Code § 74-108), the terms of such contract must be clear, definite, and unambiguous. *Miller* v. *Wallace,* 76 *Ga.* 479 (2 Am. St. R. 48); *Looney* v. *Martin,* 123 *Ga.* 209 (51 S. E. 304); *Manning* v. *Crawford,* 8 *Ga. App.* 835 (3) (70 S. E. 959).

The evidence adduced upon the trial of the issue as to jurisdiction of the court showed no such contract. The statement attributed to the deceased father that if "something happened to him," he wanted the intervenor to have custody of the child was without consideration, and amounted to no more than an expression of the father's desire concerning the care and custody of the child, in the event of his death. The trial judge did not err in directing a verdict contrary to the plea to the jurisdiction.

■ The verdict not being demanded by the law and evidence the trial judge did not abuse his discretion in granting a first new trial. *Johnson* v. *Georgia R. & Bkg. Co.,* 102 *Ga.* 577 (27 S. E. 681); *Weinkle & Sons* v. *Brunswick & W. R. Co.,* 107 *Ga.* 367 (1) (33 S. E. 471); *Shirley* v. *Swafford,* 119 *Ga.* 43 (2) (45 S. E. 722).

*Judgment affirmed. Felton, C. J., and Nichols, J., concur.*